Jessie COMEAUX, Appellant,

v.

Barbara Ann COMEAUX, Appellee.

No. 09 88 042 CV.

Court of Appeals of Texas,
Beaumont.

March 13, 1989.
As Corrected March 13, 1989.

Donald L. Boudreaux, Beaumont, for appellant.

Frank A. Adams, Beaumont, for appellee.

## OPINION

BROOKSHIRE, Justice.

Proceeding arising out of a prior divorce suit. The instant legal action is to enforce child support. Barbara Comeaux admitted that she had personally signed and approved the necessary papers when Steven Comeaux, a child of the marriage, had dropped out of Westbrook Senior High School on March 11, 1986. Under cross-examination, Mrs. Comeaux stated that she was seeking an additional $19,000 as a result of what she referred to as "this contract". Mrs. Comeaux was referring to an agreement incident to the prior divorce suit.

In February, 1985, Steven moved into the home of Mr. Jessie Comeaux and stayed with him for some time thereafter. At one point in time, for contempt purposes only, the child support was reduced by the court to $115.00 per week. Mrs. Comeaux conceded that Mr. Comeaux had never been in arrearage after that modification. Mrs. Comeaux contended that the payments were stopped when Steven went to live with his father in February, 1985, but the legal proceeding to change formally the court-ordered conservatorship did not take place until the following August. During those intervening months, Mr. Comeaux was placing a certain amount of the child support money into an account in Steven's name.

The agreement incident to divorce concerning child support was to the effect that Mrs. Comeaux was to receive support for Steven, the youngest son, until he reached eighteen years of age. She further conceded the child support was for the benefit of the child. Mrs. Comeaux testified that Steven moved out of her home in February of 1985. The parties had agreed that $200.25 per week would be the child support in the divorce agreement.

Mr. Comeaux testified that, when the custody of Steven was formally changed, Barbara did not show up for the hearing. Barbara took the position that she was only trying to enforce the agreement through the date that Steven dropped out of high school in March, 1986. At that time Steven was living at his father's house. Steven was twenty at the time of the hearing.

The agreement incident to the divorce provides that Jessie is to pay Barbara "child support in the amount of $200.25 per week", payable to the Jefferson County Child Support Office, and to make a like payment each week until the youngest child, Steven, reaches the age of eighteen years. There were other provisions for the support of the child, Jessie agreeing to pay certain medical, dental, hospital and doctor expenses.

Other separate parts of the said agreement provide clearly for the disposition of all property in considerable detail. In the agreement, the parties requested the divorce court to approve the agreement and to include the settlement agreement in the divorce decree. The agreement was approved by the trial judge who, apparently, treated the matter as a property settlement and also as a separate child support agreement. As we construe the agreement incident to the divorce, the property settlement was separate, distinct and independent of the child support provisions. Clearly, the child support provisions were not a part of the property settlement. In other words, the child support was not in lieu of, or a part of, the property settlement. The document clearly demonstrates that Barbara was not to look to or to obtain the child support payments as a part of her property settlement.

There was a prior court order entered decreeing that the child support arrearage was not modified and that the Movant,

Jessie, was not relieved from the payment of the same; but that Jessie was not in contempt of court. Jessie was to continue to pay the arrearage at the rate of $50.00 per week.

The record reflects that, on August 20, 1985, the court changed the managing conservatorship of Steven from Barbara Ann Comeaux to Jessie Comeaux. The court further stated, in its Judgment, that Jessie was to have paid $115.00 per week from February 20, 1983 through February 10, 1985, when Steven, the only minor child in question in this proceeding, moved in with Jessie. The court ruled that Jessie was current on all child support, under its orders, through February 10, 1985.

After August 20, 1985, there was no further court-ordered child support payable to the Jefferson County Child Support Office for the use of Steven.

In July, 1987, Barbara Comeaux filed a motion to enforce the child support agreement incident to the divorce. Following a trial, on December 1, 1987, the trial court awarded judgment to the Appellee in the sum of $19,244.50 covering the period from August 8, 1979, through March 11, 1986. Findings of Fact and a separate Conclusions of Law were made. The appeal has been duly perfected by Jessie, who complains of the award of a money judgment.

■ The issue, looking at the reality of the surrounding circumstances, we conclude, is whether the court ordered change of conservatorship, concerning Steven, ends the child support obligation from Jessie to Barbara. We hold, under this record, that it does.

Barbara, by the property settlement, we conclude, was fully and amply protected in all her property rights. The child support payments in question here were, in reality, for the sole benefit of Steven. As stated above, Steven went to live and reside with his father in February of 1985, but the court did not change the conservatorship rights until August of 1985. We conclude that it is sound policy that, after a child of the age of Steven actually moved in with his father and several months later the court changed the conservatorship to the father, there is no further valid reason to require the father to continue the purely child support payments which were for the sole benefit of Steven. Since the child support payments are decreed so that the noncustodial parent may, or must, provide support for the child; then, when the custody changes from one parent to the other by court order, the child support agreement has no further efficacy.

There is, indeed, under this record a most material change in circumstances, since the beneficiary of the agreement; that is to say, Steven, is no longer benefitted by Jessie paying support to Barbara. The child support agreement, then, insofar as Jessie's payments to Barbara, should come to an end. In the realities of modern life, this is a paramount condition subsequent that would supercede the previous child support agreement between the parties and render further payment by Jessie to Barbara as being irrational and illogical. *See Stegall v. Stegall,* 571 S.W.2d 564 (Tex.Civ.App.—Fort Worth 1978, no writ). The child support payments and agreement, under this record, are in the nature of a third party beneficiary contract. When Barbara no longer has physical custody and possession of Steven, there is, realistically, no reason to continue paying Barbara, inasmuch as Jessie would then be supporting and housing Steven. Jessie would be paying twice.

Hence, any child support obligations after the court changed the conservatorship on August 20, 1985, we decide, should be held unenforceable and unrecoverable. Hence, we decide that the proper relief for the Appellant would be to change the total monetary award from $19,244.50, to $13,036.75. The difference in these figures, being $6,207.75, is the amount of money that the Appellant, Jessie, did not pay Barbara from and after August 20, 1985, when Jessie was awarded managerial conservatorship, through the date of March 11, 1986.

Appellee places major reliance on *Lee v. Lee,* 509 S.W.2d 922 (Tex.Civ.App.—Beaumont 1974, writ ref'd n.r.e.). *Lee, supra,* is definitely distinguishable upon its facts. In *Lee, supra,* there existed no court-or-

dered change of managing conservatorship after a full hearing.

■ But Jessie further urges and argues that the amount should be reduced to only $9,816.75, being the support ordered through February 10, 1985, the date when Steven moved in with Jessie. But, as a matter of sound policy, we decide that these informal and extra-judicial changes should be formalized by a proper order of the court having jurisdiction. Hence, we decline to reduce the figure to $9,816.75.

We take the position that child support agreements are sui generis. They have a purpose and a place all their own. Child support payments should be treated in a separate manner and in a mode that is consistent with their true function and correct purpose. We have done so. We reject the sterile concept that, if the child support payments are approved in the divorce decree, the same cannot be, as asserted by Appellee, attacked collaterally once the judgment is final. We determine that such conceptualistic, unrealistic thinking is simply out of place in the modern-day world of numerous, tragic divorces involving minor children. And, as stated above, we certainly differentiate and distinguish between an informal change of living arrangements and a formal court-ordered change of managing conservatorship after a hearing. Of course, the previous orders of the court should be followed and adhered to by both parties until a later order of the court is rendered and entered.

■ Agreements incident to divorce, even though the same are incorporated into a final divorce decree, are correctly considered as contracts. Therefore, its legal force, effect and meaning are governed by the law of contracts and not by the law of judgments. *McGoodwin v. McGoodwin*, 671 S.W.2d 880 (Tex.1984); *Francis v. Francis*, 412 S.W.2d 29 (Tex.1967). This concept is correct as to marital property and community property agreements, as well as child support agreements.

In *McGoodwin, supra,* a divorce decree was entered that approved a property settlement agreement by which the former husband agreed to pay a sum of money as consideration for the former wife's interest in a particular tract of real estate. The court held that an implied vendor's lien in favor of the wife arose and was superior to the husband's claim of homestead, writing further that established Texas law holds that when no express lien is reserved in a deed, where the purchase money is not paid, then a lien arises by implication of law in favor of the vendor to secure the payment of the purchase money. The court reasoned that there exists a natural equity that the land should stand charged with so much of the purchase money as was not paid and that the same rule was valid and enforceable without any special written express provision for that purpose or to that effect. We conclude that there is an implication in child support agreements, such as the one before us, that the money is to be used for the use and benefit of the child and that equity requires this. See *McGoodwin, supra.*

Hence, we find that one of the conclusions of law made below to the effect that the change of conservatorship made by the trial court on August 20, 1985, did not affect the contractual obligation of Jessie Comeaux was an error.

■ A second conclusion of law, to the effect that the court's action on August 20, 1985, had no effect upon the contractual agreement between the parties, was an error of law. Accepted contract law provides that contractual settlement agreements and contractual child support agreements, incident to a divorce, may and should be reformed to reflect the true, bona fide intent of the contracting parties.

To award child support payments to Barbara, after Steven had left Barbara's residence and after the court had awarded the conservatorship to Jessie, would thwart the basic concept that the support monies were to be used for support for Steven. To require Jessie to pay the full child support to Barbara and also, in practicality, to require Jessie to support Steven, while Steven was under Jessie's roof, would result in an injustice.

REVERSED AND RENDERED in accordance with this opinion.

BURGESS, Justice, dissenting.

I respectfully dissent. The majority correctly recognizes that agreements incident to divorce are governed by the law of contracts. *McGoodwin v. McGoodwin,* 671 S.W.2d 880, 882 (Tex.1984). The majority then relies upon *McGoodwin* to "conclude that there is an implication in child support agreements, such as the one before us, that the money is to be used for the use and benefit of the child and that equity requires this." *McGoodwin* was *not* a child support agreement case. It is a case which merely follows the law of contracts regarding the imposition and enforcement of a vendor's lien. The majority, having seized the word "equity" out of the *McGoodwin* case, then recognizes that accepted contract law provides that child support agreements may and should be reformed to reflect the true, bona fide intent of the parties. This is true only *if there was a mutual mistake. Cf. Allen v. Allen,* 717 S.W.2d 311, 313 (Tex. 1986).

Mutual mistake was never pleaded nor proved by Mr. Comeaux. Thus, the interjection of reformation to reflect the true, bona fide intent of the parties is without foundation in the record. If we are going to continue to govern child support agreements under general contract law (and only the supreme court can change this), then the parties were free to contract for any future contingency, including a court-ordered change of conservatorship. The trial court correctly applied contract law. Therefore, we should affirm the judgment. Because the majority does not, I respectfully dissent.