**Judy M. HILL, Appellant,**

v.

**Walter O. HILL, Appellee.**

**No. 05–90–01547–CV.**

Court of Appeals of Texas,
Dallas.

Aug. 20, 1991.

Rehearing Denied Oct. 14, 1991.

J. Kevin Clark, Fort Worth, for appellant.

Devin R. Fuller, Dallas, for appellee.

Before ENOCH, C.J., and WHITHAM and OVARD, JJ.

OPINION

ENOCH, Chief Justice.

Judy Hill appeals from the declaratory judgment rendered in favor of Walter Hill. She brings six points of error contending that the trial court erred in granting the declaratory judgment because: (1) it was rendered in violation of the United States and Texas Constitutions; (2) it violates public policy; (3) no evidence supports it; (4) appellee waived his right to the judgment; (5) the judgment was barred by res judica-

ta; and (6) the declaratory judgment constitutes an advisory opinion. We hold that the declaratory judgment is violative of public policy, sustain the second point of error, reverse the trial court's judgment, and render judgment that Walter Hill take nothing.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 1, 1983, the parties signed a Marriage Settlement Agreement, which was incorporated into the decree of divorce entered the same day. Both the divorce decree and the Settlement Agreement provide that Husband is to pay $320 per month in child support for each of the parties' two children. The Settlement Agreement provides that the child-support terms are contractual obligations.

On May 5, 1985, Wife moved to modify the decree of divorce to increase the child support. Husband moved to have the decree modified to increase his time of possession of the children. The trial court denied Wife's motion to increase the amount of child support and granted Husband's motion enlarging the periods in which he could possess the children.

In November 1987, Wife again sought to have the decree modified to provide an increased level of child support. Husband filed a counter motion seeking a reduction in the amount of child support. Husband later amended his counter motion to allege that Wife's motion to modify the decree constituted an anticipatory breach of the Marriage Settlement Agreement for which he was entitled to damages.

In April 1989, Wife nonsuited her motion to modify. In July 1989, Husband amended his counterclaim seeking a declaratory judgment that Wife had breached the Marriage Settlement Agreement by requesting the trial court to modify the child-support terms of the divorce decree. In March 1990, Wife filed another motion for increase of child support. The trial court ruled that the Marriage Settlement Agreement was enforceable as a contract and that both parties had breached the contract by requesting the trial court to modify the child-support terms of the divorce decree. The trial court then declared that Wife will be in breach of the Agreement if she obtains an increase in the amount of court-ordered child support and that Husband will be entitled to damages equal to the amount of the increase. Under the declaratory judgment, Wife will also be liable for Husband's costs and reasonable and necessary attorney's fees to defend against the motion to increase child support and the action to enforce the Settlement Agreement.

## PUBLIC POLICY AND MODIFICATION OF CHILD–SUPPORT AGREEMENTS

■ A child-support obligation incident to divorce is enforceable either by an action for contempt based on the divorce decree's order to pay child support or by an action in contract based on a contractual agreement[1] between the parties to pay child support. When both the divorce decree and a marriage settlement agreement require payment of child support and the paying spouse obtains a decrease in the amount of the court-ordered payments, the paid spouse can still obtain the original amount of child support by suing for breach of contract under the marriage settlement agreement. *Ruhe v. Rowland,* 706 S.W.2d 709, 710 (Tex.App.—Dallas 1986, no writ). Husband argues that this doctrine works both ways, that is, that the paying spouse can sue the paid spouse for obtaining an increase in the amount of court-ordered child support over the amount specified in the marriage settlement agreement.

■ As Husband states in his brief, his "argument is simply that if it's 'good for the goose it's good for the gander.'" This argument, however, is without merit because, in child-support cases, the court's primary concern (to continue Husband's

---

1. Where we discuss agreements to pay child support in this opinion, we mean only those agreements whose terms the parties have agreed are enforceable as contract terms. *See* Tex.Fam. Code Ann. § 14.06(d) (Vernon 1986).

analogy) is neither the goose nor the gander but is the goslings. The declaratory judgment in this case permits Husband to nullify, as a practical matter, a court's determination that an increase in the amount of child support is in the children's best interest. When the parties entered into the Agreement, their children were ages two and four. Under Husband's argument, the amounts of child support, once fixed in the Agreement, could not change for the more than fifteen years that its provisions would govern the child-support payments. This argument flies in the face of the long-established policy that the court may modify the amount of child support to be paid by a party. TEX.FAM.CODE ANN. § 14.-08(c)(2) (Vernon Supp.1991).

Child-support agreements require different consideration from property-settlement agreements, which are construed under the law of contracts. *See Allen v. Allen,* 717 S.W.2d 311, 313 (Tex.1986); *Boyett v. Boyett,* 799 S.W.2d 360, 362 (Tex.App.—Houston [14th Dist.] 1990, no writ). In property-settlement agreements, finality is critical. The parties must be able to prove title to the property in order to mortgage, sell, lease, or otherwise utilize their property. No such considerations inhere in child-support agreements; there, the State's interest in the continuing welfare of the children outweighs the parents' interest in having an established, permanent level of support payments.

■ In *Galaznik v. Galaznik,* the San Antonio Court of Appeals held that a contract which, by its terms, barred the mother from seeking child support from the father so long as he sent her "periodic payments" of $300 per month was unenforceable. *Galaznik v. Galaznik,* 685 S.W.2d 379, 383 (Tex.App.—San Antonio 1984, no writ). Similarly, an interpretation of an agreement that would, as a practical matter, nullify Wife's ability to seek an increase in child support is against public policy. Child-support agreements are not like other long-term contracts where the parties assume the risk of changes in the economy and in the cost of the product. Child-support payments are for the benefit of the children, not the parents, *Comeaux v. Comeaux,* 767 S.W.2d 500, 503 (Tex. App.—Beaumont 1989, no writ), and child-support agreements are structured to fairly provide for the "best interests" of the children, not so that one party or another can make a profit. When the economy changes or when special circumstances arise so that the best interests of the children require larger support payments, the courts must be able to order an effective increase in the payments without regard to any "contracts" between the parties. *See Huckeby v. Lawdermilk,* 709 S.W.2d 331, 333 (Tex.App.—Eastland 1986, no writ) (affirming trial court's modification of both divorce decree and child-support agreement increasing child support). The support of one's children is not a proper area for long-term economic gambling, and the courts will not enforce the parties' attempts to engage in such speculation.

When the parties draft child-support agreements, they cannot agree to prohibit the intervention of the courts required by the Family Code as necessary to protect the children. Thus, the parties may agree to do more than the court would require to provide for the best interest of the children, but they cannot agree to do less. Therefore, when the court decreases the amount of court-ordered child support, the paid spouse may enforce the higher amount of child support agreed to in the support agreement because the paying spouse has obligated himself to do more than the court requires. However, when the court requires more than was agreed to in the support agreement, the paying spouse must pay the increased amount and cannot rely on an agreement that permits him to do less. *See Huckeby,* 709 S.W.2d at 333.

The public policy of the State of Texas on child-support issues is clear: the welfare of the children is always the primary concern. Many well-established legal doctrines contain exceptions for child-support concerns. Current wages can be garnished to pay for child support. TEX. CONST. art. XVI, § 28. Employers cannot fire or refuse to hire persons subject to garnishment for child support. TEX.FAM.CODE ANN. § 14.43(m) & (n) (Vernon Supp.1991). The court can

have continuing, exclusive jurisdiction over the children and their welfare even after it issues a "final decree." TEX.FAM.CODE ANN. § 11.05 (Vernon 1986). The court's contempt power permits it to require, in effect, that the paying spouse mortgage or sell exempt assets, which could not be reached by execution, to make the child-support payments. *See* TEX.FAM.CODE ANN. § 14.40(g) (Vernon Supp.1991). These exceptions set forth the public policy of the State to seek the best interests of the children, and we will not uphold a common-law doctrine that interferes with the court's ability to enforce laws striving to insure the best interests of the children over whom it has jurisdiction.

As the trial court's interpretation of the common law of contracts would effectively prevent other courts from carrying out their duty to increase the amount of court-ordered child support when required by the best interests of the children, we hold that the declaratory judgment is violative of the public policy of this State. We therefore sustain the second point of error, reverse the trial court's judgment, and render judgment that Husband take nothing. Because of our disposition of the second point of error, we need not address the first or third through sixth points of error.