Villarreal v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-92-254-CR

     LUGARDO VILLARREAL,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 92-64-C
                                                                                                    

DISSENTING OPINION
                                                                                                    

      I disagree with the disposition of point one.
      That the judicial process itself can emotionally traumatize children who are the victims of
sexual assault is within the realm of common knowledge. Their natural vulnerability, reticence,
and sensitivity makes that conclusion self-evident. Assuming, however, that the prosecutor's
hyperbole—i.e., comparing the child-victim's emotional trauma from testifying in court to another
act of rape by the defendant—is beyond the bounds of permissible argument, the question is
whether the denial of Villarreal's motion for a mistrial is error. See Washington v. State, 822
S.W.2d 110, 118 (Tex. App.—Waco 1991), rev'd on other grounds, No. 65-92 (Tex. Crim. App.
June 23, 1993). Whether the court acted properly depends upon the efficacy of the curative
instruction. Did it remove the prejudicial effect of the improper argument? See Hernandez v.
State, 819 S.W.2d 806, 820 (Tex. Crim. App. 1991). If it did, then there is no error in denying
the mistrial, and no harm analysis is required. See id.
      Ordinarily, an instruction to disregard will cure the harm from improper argument. Anderson
v. State, 633 S.W.2d 851, 855 (Tex. Crim. App. 1982). In this particular instance, however, the
majority holds that the argument is so extreme and manifestly improper, and thus so inflammatory,
that the instruction did not erase its prejudicial effect on the punishment verdict. See Hernandez,
819 S.W.2d at 820. This is the precise point of my disagreement.
      Unlike the constitutional right to remain silent, which is shielded from prosecutorial comment
by a mandatory statute, the constitutional right to a jury trial enjoys no such protection. See Tex.
Code Crim. Proc. Ann. art. 38.08 (Vernon 1979). Nor did the prosecutor's argument inject new
facts into the case. Instead, the only reason given for holding the instruction ineffective is the
following: "Testifying as a witness is the responsibility of every citizen, regardless of the odious
nature of the evidence. To equate the fulfillment of this responsibility with being subject to rape
is the type of argument that should be considered extreme and manifestly improper and thus so
inflammatory that its prejudicial effect could not reasonably be removed from the minds of the
jurors by the instruction given."
      Apparently after only 35 minutes of deliberation, the jury convicted Villarreal of the
aggravated sexual assault of a 9-year-old girl. Because he had no prior criminal record, the
punishment on this first-degree felony ranged from 5 years to 99 years or life, plus a fine. See
Tex. Penal Code Ann. § 12.32 (Vernon Supp. 1993). Acting solely on the evidence produced
during the guilt-innocence phase, the jury assessed punishment at 25 years in prison.
      The majority does not point to anything in the record indicating that the instruction was
ineffective. To the contrary, that the jury heeded the court's instruction to disregard is best
illustrated by the punishment verdict itself. It is measured to the evidence and certainly not
excessive. Only if the 25-year sentence is excessive can one reasonably and fairly say that the
instruction to disregard was fruitless. To find the punishment excessive under the facts of this case
simply ignores the reality of the record and the common-sense view of the evidence by the jury.
      Therefore, I disagree with the majority holding that the curative instruction was ineffective. 
As a result, I also disagree with their finding of error from the denial of the motion for a mistrial. 
I would hold that there is no error. Without error, no harm analysis is necessary. See Tex. R.
App. P. 81(b)(2). Agreeing with the balance of the majority opinion, I would affirm Villarreal's
conviction. For these reasons I dissent.
 
                                                                                 BOB L. THOMAS
                                                                                 Chief Justice

Dissenting opinion delivered and filed August 4, 1993
Publish 



 one month later. The order designates Daily as B.A.C.’s managing
conservator and orders Clark to pay him child support of $203 per month.
      The Attorney General filed a motion to enforce the October 1998 child support order in
September 2001. The Attorney General agreed not to seek a contempt order, and the court
rendered a judgment for the arrearages of $2,316 in December 2001.
      Troxel filed a motion to enforce the child support provisions of the divorce decree in
March 2002. The court granted her motion. The order recites the pertinent child support
provisions of the divorce decree and references the 1991 arrearages judgment. The court
found that Clark was “in arrears in the amount of $23,358 for the period January 25, 1991
through October 30, 1998.” Based on this finding, the court held Clark in contempt and
sentenced him to the county jail for 150 days. The court suspended his commitment to jail and
placed him on community supervision for ten years. The court ordered Clark to pay Troxel
$150 per month to satisfy the arrearages. The court also granted Troxel a cumulative money
judgment for the arrearages.
      Clark sought review of the contempt order in this mandamus proceeding and by direct
appeal. We have determined that this Court does not have jurisdiction to review the contempt
order by direct appeal. In re B.A.C., No. 10-02-00243-CV, slip op. at 2, 2004 Tex. App.
LEXIS 3018, at *2 (Tex. App.—Waco Mar. 31, 2004, no pet. h.).
ADEQUATE LEGAL REMEDY
      To obtain mandamus relief, a petitioner must demonstrate: (1) the respondent committed a
clear abuse of discretion or acted in violation of a duty imposed by law; and (2) the petitioner
has no adequate legal remedy. In re Bass, 113 S.W.3d 735, 738 (Tex. 2003). Troxel
contends that Clark’s adequate remedy in this case is by application for writ of habeas corpus. 
We agree, but rather than requiring Clark to file a third proceeding to seek review of the
contempt order, we shall construe his mandamus petition as a petition for writ of habeas
corpus.
      According to the Supreme Court, “Contempt orders that do not involve confinement
cannot be reviewed by writ of habeas corpus, and the only possible relief is a writ of
mandamus.” In re Long, 984 S.W.2d 623, 625 (Tex. 1999) (orig. proceeding). Our research
has disclosed only one decision of the Supreme Court in which habeas relief was granted a
contemnor like Clark whose commitment was suspended. In Ex parte Brister, the contemnor
was held in contempt, her commitment was suspended, and she was ordered to 60 days’ house
arrest among other terms and conditions of the suspension. 801 S.W.2d 833, 834 (Tex. 1990)
(orig. proceeding).
      Several courts of appeals have held that contempt orders in which the trial court has
suspended the commitment and placed the respondent on community supervision may or may
not be reviewable by habeas depending on whether the conditions of community supervision
include some form of “tangible restraint.” E.g., In re Ragland, 973 S.W.2d 769, 771 (Tex.
App.—Tyler 1998, orig. proceeding). Thus in Ragland, the Tyler Court held that the
requirement that the contemnor perform community service each week for a year was a
sufficiently tangible restraint to justify habeas relief. Id. Other courts have reached similar
conclusions. See In re Pierre, 50 S.W.3d 554, 558-59 (Tex. App.—El Paso 2001, orig.
proceeding) (report monthly to community supervision officer, remain in county, etc.); Ex
parte Duncan, 796 S.W.2d 562, 564 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding)
(same). Clark’s contempt order is similar to these because it places him on community
supervision and imposes numerous terms and conditions similar to those in the cases cited.
      The Tyler Court has concluded that a contemnor’s liberty was not sufficiently restrained
by a community supervision order which merely required him to pay child support and
attorney’s fee arrearages and otherwise comply with the court’s orders. See Ex parte Hughey,
932 S.W.2d 308, 310-11 (Tex. App.—Tyler 1996, orig. proceeding). Other courts have
agreed. See In re Zenergy, Inc., 968 S.W.2d 1, 12 (Tex. App.—Corpus Christi 1997, orig.
proceeding) (suspended contempt order can be reviewed by habeas “when and if Judge Evins
enforces the judgment”); Ex parte Sealy, 870 S.W.2d 663, 665-66 (Tex. App.—Houston [1st
Dist.] 1994, orig. proceeding) (suspended contempt order which required contemnor only to
pay attorney’s fees and costs and otherwise comply with visitation orders did not impose
sufficient restraint for habeas relief).
      The First Court of Appeals has concluded that contempt orders in this latter category are
not reviewable by mandamus or by habeas. See In re Cornyn, 27 S.W.3d 327, 332 (Tex.
App.—Houston [1st Dist.] 2000, orig. proceeding); Sealy, 870 S.W.2d at 666. Thus, the First
Court believes that in some circumstances litigants have no remedy.
      Litigants should not have to navigate this morass to obtain relief. Texas courts have not
clearly stated the appropriate standard for determining when habeas relief is appropriate and
when mandamus relief is appropriate in such cases. Accordingly, we shall.
      We hold that when a contemnor is actually confined or when the contemnor’s commitment
has been suspended and the contemnor has been placed on community supervision, habeas is
the appropriate remedy. If the commitment has been suspended without supervision or if the
contempt order does not involve confinement (e.g., contempt by fine only), mandamus is the
appropriate remedy.
      Thus, we agree with Troxel’s argument that habeas is the appropriate remedy in this case. 
However, rather than requiring Clark to replead this case as a petition for writ of habeas
corpus, we shall construe his mandamus petition as one seeking habeas relief. See Ex parte
Casillas, 25 S.W.3d 296, 297 n.1 (Tex. App.—San Antonio 2000, orig. proceeding); see also
Motor Veh. Bd. v. El Paso Indep. Auto Dealers Assn., 1 S.W.3d 108, 111 (Tex. 1999) (“Our
policy has been to construe the Rules of Appellate Procedure liberally, so that decisions turn
on substance rather than procedural technicality.”).
CLEAR ABUSE OF DISCRETION
      A trial court commits a clear abuse of discretion if it issues an order beyond its
jurisdiction. In re Sw. Bell Tel. Co., 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding). 
Clark argues that the trial court lacked jurisdiction to issue a contempt order against him in this
case because Troxel’s enforcement motion was untimely. The basis of his argument rests on
the fact that the court’s October 1998 order, which appointed Daily as B.A.C.’s managing
conservator, modified the child support provisions of the divorce decree such that Clark was
ordered to pay child support thereafter to Daily rather than Troxel. He contends that under
section 157.005 of the Family Code Troxel had only six months after October 1998 to file a
motion to enforce the support provisions of the divorce decree by contempt. See Tex. Fam.
Code. Ann. § 157.005(a)(2) (Vernon 2002).
      Troxel counters that the trial court had jurisdiction to hold Clark in contempt because: (1)
Clark’s support obligation is a continuing obligation which ends only when B.A.C. becomes an
adult and graduates from high school (and thus the motion to enforce was timely); and (2)
Clark’s interpretation of section 157.005 conflicts with other provisions of the Family Code.
      Section 157.005 provides in pertinent part:
(a) The court retains jurisdiction to render a contempt order for failure to comply
with the child support order if the motion for enforcement is filed not later than the
sixth month after the date:

            (1) the child becomes an adult; or
 
(2) on which the child support obligation terminates under the order or by
operation of law.

Tex. Fam. Code. Ann. § 157.005(a).
      Section 151.001 describes a parent’s duty to support his or her child in pertinent part as
follows:
            (a)(3) [a parent has] the duty to support the child, including providing the
child with clothing, food, shelter, medical and dental care, and education;

            . . . .
 
(b) The duty of a parent to support his or her child exists while the child is
an unemancipated minor and continues as long as the child is fully enrolled in
an accredited secondary school in a program leading toward a high school
diploma until the end of the school year in which the child graduates.
 
       (c) A parent who fails to discharge the duty of support is liable to a person
who provides necessaries to those to whom support is owed.

Id. § 151.001(a)(3), (b), (c) (Vernon Supp. 2004). Section 151.001(d) provides that the rights
and duties of a parent are subject to any court order affecting them. Id. § 151.001(d) (Vernon
Supp. 2004).
      Clark argues that the modification order terminated his obligation to pay support to Troxel
by operation of law. See id. § 157.005(a)(2). The Fourteenth Court of Appeals seemingly
reached the opposite conclusion in a similar case. Ex parte Tanner, 904 S.W.2d 202, 204
(Tex. App.—Houston [14th Dist.] 1995, no writ). That court observed:
Under TEX. FAM. CODE ANN. § 4.02 (Vernon 1993),


 a parent has an ongoing
obligation to support his or her child while the child is a minor. We interpret the
child support obligation referred to in Section 14.40(b)(2)


 to be this ongoing
obligation, rather than the more specific obligation to pay a particular amount, such as
under the divorce decree here. Thus, we construe Section 14.40(b)(2) to refer to the
time at which the ongoing obligation to support a child ceases, as contrasted from
merely being modified.

Id. (footnotes added) (citation omitted).
      However, the Code Construction Act requires a court to give effect to every term used in a
legislative enactment. Tex. Gov’t Code Ann. § 311.021(2) (Vernon 1998). The Supreme
Court has recently described a court’s obligation in this regard as follows:
Generally, we will accept the words used according to their ordinary meaning, unless
given a specific statutory definition; we will not give them an exaggerated, forced, or
constrained meaning. Also, we will presume that the Legislature used every word of
a statute for a purpose. Finally, we will try to avoid construing a statutory provision
in isolation from the rest of the statute; we should consider the act as a whole, and not
just single phrases, clauses, or sentences.

City of Austin v. Sw. Bell Tel. Co., 92 S.W.3d 434, 442 (Tex. 2002) (footnotes omitted).
      It appears that the Fourteenth Court in Tanner failed to see any distinction between the
terms “duty” and “obligation.” Section 157.005(a) vests a trial court with jurisdiction to hold
an obligor in contempt for failure to pay child support if the enforcement motion is filed within
six months after the child support “obligation” terminates. Tex. Fam. Code. Ann. §
157.005(a). Conversely, section 151.001(b) defines in general terms the extent of a parent’s
“duty” to support his or her child. Id. § 151.001(b). Section 151.001(c) expressly recognizes
that a parent’s “duty” to support a child can be modified by court order. Id. § 151.001(c). 
Because the Legislature used these two terms in the child support statutes, we must presume
that it did so for a particular purpose. Sw. Bell Tel., 92 S.W.3d at 442.
      Certainly, the terms “duty” and “obligation” can be synonyms in ordinary meaning. The
New American Roget’s College Thesaurus 370 (Philip D. Morehead ed., rev. ed., Signet 1985)
(listing “duty” as first synonym of “obligation”). In the child support context however, the
term “obligation” assumes a more unique meaning. See Tex. Gov’t Code Ann. § 311.011(b)
(Vernon 1998) (“Words and phrases that have acquired a technical or particular meaning,
whether by legislative definition or otherwise, shall be construed accordingly.”). Title 5
contains numerous provisions which reference a child support “obligation.” Virtually all of
these provisions reflect that an “obligation” to pay child support is established by court order.
      The following are some examples:
      •    “‘Child support services’ means . . . court actions to . . . establish, modify, or
enforce child support . . . obligations”; Tex. Fam. Code. Ann. § 101.006 (Vernon
2002);
 
      •    “‘Title IV-D case’ means an action in which services are provided by the Title IV-D
agency . . . relating to the . . . establishment, modification, or enforcement of a child
support . . . obligation”; Id. § 101.034 (Vernon 2002);
 
      •    child support order shall require each party to inform the other and the court, etc. of
changes in address, etc. “as long as any person, as a result of the order, is under an
obligation to pay child support”; Id. § 105.006(b) (Vernon Supp. 2004);
 
      •    “A child support obligation does not terminate on the death of the obligee but
continues as an obligation to the child named in the support order, as required by this
section”; Id. § 154.013(a) (Vernon 2002);
 
      •    “A support order may be modified only as to obligations accruing after the earlier of:
(1) the date of service of citation; or (2) an appearance in the suit to modify”; Id. §
156.401(b) (Vernon Supp. 2004).

      These statutes lead us to the conclusion that the “duty” to support a child is a general
responsibility imposed by statute while an “obligation” to pay child support is a responsibility
imposed by a specific court order.
      Applying this interpretation, we must determine if and when Clark’s court-ordered
“obligation” to pay child support to Troxel terminated. Two statutes address when a child
support obligation terminates. Section 154.006 provides:
      § 154.006. Termination of Duty


 of Support
 
(a) Unless otherwise agreed in writing or expressly provided in the order or as
provided by Subsection (b), the child support order terminates on the marriage of the
child, removal of the child's disabilities for general purposes, or death of the child or
a parent ordered to pay child support.
 
(b) Unless a nonparent or agency has been appointed conservator of the child
under Chapter 153, the order for current child support, and any provision relating to
conservatorship, possession, or access terminates on the marriage or remarriage of the
obligor and obligee to each other.

Act of May 27, 1999, 76th Leg., R.S., ch. 556, § 9, 1999 Tex. Gen. Laws 3058, 3060
(amended 2003) (current version at Tex. Fam. Code. Ann. § 154.006 (Vernon Supp. 2004)).
      Section 154.013 provides in pertinent part:
      § 154.013. Continuation of Duty


 to Pay Support After Death of Obligee
 
(a) A child support obligation does not terminate on the death of the obligee but
continues as an obligation to the child named in the support order, as required by this
section.

Tex. Fam. Code Ann. § 154.013(a).
      The Beaumont Court of Appeals has held that a court order modifying a prior custody
order by designating the obligor parent as the child’s managing conservator “ends the child
support obligation from [the obligor parent and former possessory conservator] to [the obligee
parent and former managing conservator].” Comeaux v. Comeaux, 767 S.W.2d 500, 502
(Tex. App.—Beaumont 1989, no writ); accord In re Doe, 917 S.W.2d 139, 142 (Tex.
App.—Amarillo 1996, writ denied); cf. Tanner, 904 S.W.2d at 204 (modification order
increasing amount of child support to be paid did not terminate child support obligation
imposed by original divorce decree).
      We must decide whether the Comeaux holding should extend to a situation in which the
court designates a non-parent as managing conservator of the child. We conclude that it does. 
An order modifying a prior child custody or support order necessarily supercedes the prior
order to the extent a modification is ordered. Thus, an order modifying a prior child support
order may or may not “terminate” the obligation imposed by the prior order, depending on the
circumstances.
      The modification order in Tanner did not “terminate” the obligor’s obligation to pay child
support to his former wife on behalf of their child. See 904 S.W.2d at 204. Rather, it
increased the amount of his obligation. Id. at 203-04. Conversely in Comeaux, the
modification order “terminated” the obligor’s obligation to pay child support to his former
wife because the modification order designated the obligor as the managing conservator. See
767 S.W.2d at 502.
      Here, the modification order “terminated” Clark’s obligation to pay child support to
Troxel and replaced it with an obligation to pay child support to Daily. Id. Under the terms
of section 154.006(a), we hold that his obligation to Troxel terminated as “expressly provided
in the [modification] order.” See Tex. Fam. Code Ann. § 154.006(a). Thus, Clark’s
obligation to pay child support to Troxel terminated on October 28, 1998, when the court
signed the modification order.
      Section 157.005(a) defines the length of time a court retains jurisdiction to hold an obligor
in contempt for failure to pay child support. In re A.D., 73 S.W.3d 244, 248-49 (Tex. 2002). 
Under subsection (a)(2), a court’s jurisdiction to hold an obligor in contempt expires if an
enforcement motion is not filed within six months after the obligation terminates. Tex. Fam.
Code Ann. § 157.005(a)(2). Troxel did not file her enforcement motion within that six-month
period. Thus, the court did not have jurisdiction to hold Clark in contempt for non-payment of
the child support owed to Troxel.
      Because the court did not have jurisdiction, Clark has met his burden of showing a clear
abuse of discretion. See Sw. Bell Tel., 35 S.W.3d at 605.
      We conditionally grant the writ of mandamus and direct Respondent to withdraw the
contempt order entered on May 29, 2002 in cause number 28,034 and notify this Court in
writing that he has done so. The writ will issue only if Respondent fails to comply within 20
days after the date of this opinion.
 
                                                                   BILL VANCE
                                                                   Justice
Before Chief Justice Gray,
      Justice Vance, and
      Justice Reyna
      (Chief Justice Gray dissenting)
Writ conditionally granted
Opinion delivered and filed July 21, 2004
[OT06]