Ruth Olivia GARCIA–UDALL,
Appellant,

v.

Thomas Howard UDALL, Appellee.

No. 05–03–01270–CV.

Court of Appeals of Texas,
Dallas.

Aug. 11, 2004.

Carmen Elaine Eiker, Emil Lippe, Jr., Lippe & Associates, P.C., Dallas, for Appellant.

Charles Robertson, Robertson, Railsback, Heather D. Bailey, Sharon N. Freytag, Haynes & Boone, L.L.P., Dallas, for Appellee.

Before Justices FITZGERALD, RICHTER, and LANG.

## OPINION

FITZGERALD, Justice.

Ruth Garcia–Udall appeals certain of the child conservatorship provisions in the divorce decree from her marriage to Thomas Howard Udall. Appellant brings three issues asserting the trial court erred by: (a) not following the mediated settlement agreement regarding decisions on the child's health care; and (b) determining that appellee should have the final say on matters relating to immunization of the child. We modify the judgment and affirm the judgment as modified.

## BACKGROUND

The parties married on August 5, 2000, and appellant gave birth to their child on August 1, 2001. Eight-and-one-half months later, on April 22, 2002, appellant filed for divorce.

On June 18, 2002, the trial court held a hearing on the issuance of temporary orders. At the conclusion of the hearing, the trial court dictated temporary orders and entered them on the docket sheet. Concerning the child's medical care, the court approved the parties' agreement that they would jointly choose a pediatrician for the child from appellant's health-insurance plan and that if a parent took the child to a doctor not covered by the health-insurance plan, that parent would have to pay the cost. The trial court also ordered that both parties had authority to make emergency medical decisions for the child, but appellee would make all non-emergency medical decisions, including whether to have the child immunized. The parties submitted proposed written orders.

On July 30, 2002, the trial court signed written temporary orders. The written temporary orders did not follow the trial court's oral rendition at the June 18, 2002 hearing concerning the right to consent to medical treatment of the child in a non-emergency situation. Unlike the oral rendition, which gave appellee the authority to make all non-emergency medical decisions, the written orders gave each party the right during his or her period of possession to consent to non-invasive medical and dental treatment for the child. The written orders gave appellee the exclusive right "to consent to medical, dental, and surgical treatment involving invasive procedures, and to consent to psychiatric and psychological treatment, specifically including, but not limited to, the exclusive right to determine whether the child should be immunized."

After the trial court signed the written temporary orders, the parties signed a mediated settlement agreement, in which they agreed to all the issues relating to the divorce and most of the issues in the suit affecting the parent-child relationship. In underlined, boldface capital letters, the mediated settlement agreement provided, *"THIS AGREEMENT IS NOT SUBJECT TO REVOCATION OR CHANGE,"* and it was signed by the parties and their attor-

neys. The mediated settlement agreement stated, "The parental rights and duties shall be allocated between Mother and Father according to the terms set forth in the Temporary Orders in this case" except as modified in the mediated settlement agreement. The mediated settlement agreement contained three modifications of the temporary orders relevant to this appeal. First, concerning the decision making on the child's health care, "In the event the parties cannot agree on medical, dental or surgical treatment involving invasive procedures and to psychiatric and psychological treatment for the Child, then Father will have the right to make the final decision on those matters." Second, concerning immunizations, "The issues of rights and duties regarding the Child's immunizations will be tried before the Court if not resolved by agreement beforehand." Third, concerning selection of a physician and healthcare appointments, the agreement provided, "The parties will jointly choose the Child's pediatrician from the list of providers under Mother's current employer provider health insurance plan. Neither party will take the Child to a healthcare provider without first notifying the other at least forty-eight (48) hours in advance so they may attend the appointment if they so desire."

The trial court entered the divorce decree, which acknowledged the mediation and stated that except for the issue of immunization of the child, "the terms and provisions" of the mediated settlement agreement "are reflected in this Decree." Appellant objected to the decree, com-plaining that some of its provisions differed from those in the mediated settlement agreement. Appellant alleged that one difference was that the divorce decree did not give each parent during periods of possession the right to consent to medical and dental care not involving an invasive procedure as set out in the written temporary orders and incorporated into the mediated settlement agreement. Instead, the decree stated they had the "joint right" to consent to such care. Appellant also objected to the decree stating the parties could not take the child to any healthcare provider other than the agreed-upon physician or, in his absence, one of his associates, because that term was not in the mediated settlement agreement and was contrary to the mediated settlement agreement's provisions. Appellant also objected to the decree stating that on the issue of immunizations and inoculations, appellee was to consult with appellant on the issue, and if they could not reach a joint decision, then appellee would have the sole right to make decisions regarding the child's immunizations, because this determination was contrary to the evidence. The trial court subsequently entered findings of fact and conclusions of law, which found the orders in the decree were in the child's best interest.[1]

Appellant filed a motion for new trial, the grounds of which included complaints that the decree varied from the terms of the mediated settlement agreement. She also complained that the trial court had determined the immunization issue without a trial before the court. The trial court

---

1. The findings of fact found that it was in the child's best interest for the parties to have the joint right to consent to all medical treatment, all dental treatment, surgical treatment involving invasive procedures, and psychological or psychiatric treatment, and if they cannot agree, for appellee to have the exclusive right to make the decisions regarding these types of treatment. However, concerning medical and dental treatment not involving an invasive procedure, the divorce decree provided only that the right to consent to these types of treatment was a joint right of the parties; the decree made no provision for resolving a failure to agree.

agreed it had given the parties "short shrift" on the immunization issue, and the court granted the motion for new trial on that issue. After hearing evidence on the immunization issue, the trial court determined that appellee should consult with appellant about the child's immunizations, and if they could not agree, then he would have the final decision-making authority on immunizations.

## MEDIATED SETTLEMENT AGREEMENT

In her first two issues, appellant asserts the trial court abused its discretion by entering provisions in the divorce decree that were inconsistent with the mediated settlement agreement. Section 153.0071(c) of the family code permits the trial court to refer a suit affecting the parent-child relationship to mediation. TEX. FAM. CODE ANN. § 153.0071(c) (Vernon 2002).[2] If the agreement states in the appropriate font that it is not subject to revocation and is signed by both parties and their attorneys, then "a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." *Id.* § 153.0071(d), (e). The mediated set-

tlement agreement in this case meets the requirements of section 153.0071(d).

## Right to Consent to Medical Treatment

■ Appellant asserts the divorce decree does not follow the mediated settlement agreement regarding the parties' right to consent to medical treatment for the child. Appellee asserts the decree is not in conflict with the mediated settlement agreement.

On the issue of non-emergency medical decision making, the temporary orders stated: (1) for non-invasive medical or dental treatment for the child, each party had the right to consent to such treatment during his or her periods of possession; and (2) for invasive medical, dental, or surgical treatment, including immunizations, or psychological or psychiatric treatment for the child, appellee had the exclusive right to consent to such treatment. The mediated settlement agreement incorporated the temporary orders as modified by the agreement. The only express reference in the mediated settlement agreement to medical decision making (other than for immunizations, which was to be determined in a trial before the court) is the following term: "In the event the par-

**2.** Section 153.0071 provides in pertinent part:

 (a) On written agreement of the parties, the court may refer a suit affecting the parent-child relationship to arbitration. The agreement must state whether the arbitration is binding or non-binding.

 (b) If the parties agree to binding arbitration, the court shall render an order reflecting the arbitrator's award unless the court determines at a non-jury hearing that the award is not in the best interest of the child. The burden of proof at a hearing under this subsection is on the party seeking to avoid rendition of an order based on the arbitrator's award.

 (c) On the written agreement of the parties or on the court's own motion, the court may refer a suit affecting the parent-child relationship to mediation.

 (d) A mediated settlement agreement is binding on the parties if the agreement:

 (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;

 (2) is signed by each party to the agreement; and

 (3) is signed by the party's attorney, if any who is present at the time the agreement is signed.

 (e) If a mediated settlement agreement meets the requirements of Subsection (d), a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.

TEX. FAM. CODE ANN. § 153.0071 (Vernon 2002).

ties cannot agree on medical, dental or surgical treatment involving invasive procedures and to psychiatric and psychological treatment for the Child, then Father will have the right to make the final decision on those matters."

Appellant asserts this provision in the mediated settlement agreement changed the decision making on invasive and psychological/psychiatric treatment from an exclusive right of appellee's to a joint right of the parties with appellee having the authority to make the decision if they cannot agree. Under this construction, the incorporation of the temporary orders' provision that each party had the right to consent to noninvasive treatment during periods of possession was left unchanged. The divorce decree, however, made the right to consent to noninvasive medical or dental treatment a "joint right" of the parties.

Appellee argues that the provision in the mediated settlement agreement concerning "medical, dental or surgical treatment involving invasive procedures" applies to all non-emergency medical decisions and not just invasive medical, dental, and surgical treatment and that the provision gave appellee final decision-making authority on all non-emergency medical decisions. The trial court also interpreted the mediated settlement agreement in this manner.

■■■ If the language in a contract can be given a certain or definite meaning, it is not ambiguous, and we are obligated to interpret the contract as a matter of law. *DeWitt County Elec. Co-op., Inc. v. Parks,* 1 S.W.3d 96, 100 (Tex.1999). An ambiguity does not arise merely because the parties to an agreement advance differing interpretations. *See Lopez v. Munoz, Hockema & Reed,* 22 S.W.3d 857, 861 (Tex. 2000). The contract is ambiguous only if the application of established rules of construction leaves an agreement susceptible

to more than one reasonable meaning. *DeWitt County,* 1 S.W.3d at 100; *Lopez,* 22 S.W.3d at 861. Language should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. *Caldwell v. Curioni,* 125 S.W.3d 784, 792 (Tex.App.-Dallas 2004, pet. denied).

■■■ The sentence at issue in the mediated settlement agreement reads, "In the event the parties cannot agree on medical, dental or surgical treatment involving invasive procedures and to psychiatric and psychological treatment for the Child, then Father will have the right to make the final decision on those matters." Appellee argues,

> The clause "involving invasive procedures" applies to surgical treatment; medical treatment is left unmodified by any reference to the type of treatment at issue. In other words, the final sentence of the paragraph provides that "[i]n the event the parties cannot agree on medical ... treatment for the child, then father will have the right to make the final decision on those matters."

We disagree with appellee's application of the grammatical rules to the sentence at issue. The words "medical, dental or surgical" are adjectives modifying the same noun, "treatment"; the participial phrase "involving invasive procedures" also modifies the same noun, "treatment." Thus, the word "treatment" is modified by both "medical, dental or surgical" and "involving invasive procedures." Nothing in the structure of the sentence indicates "involving invasive procedures" modifies "treatment" only when it is also modified by "surgical" but not "medical" or "dental." If the parties had intended that meaning, then the sentence would read, "In the event the parties cannot agree on medical or dental treatment or surgical treatment

involving invasive procedures ...." However, they did not so word it. We conclude as a matter of law, that the phrase, "involving invasive procedures" applies to "medical" and "dental" treatment as well as surgical treatment. The mediated settlement agreement did not modify the incorporated provision in the temporary orders that each parent had the right to consent to noninvasive medical or dental procedures during his or her period of possession. The fact that the trial court interpreted the mediated settlement differently is irrelevant because the trial court has no discretion to misapply the law. *In re Kuntz*, 124 S.W.3d 179, 181 (Tex.2003).

We conclude the divorce decree does not follow the mediated settlement agreement regarding the parties' right to consent to noninvasive medical treatment because the mediated settlement agreement makes the right an individual right of each parent during his or her periods of possession, and the divorce decree makes it a joint right.

## Limitation of Health Care Provider

■ Appellant asserts the divorce decree did not follow the mediated settlement agreement because it added a term not included in the mediated settlement agreement by prohibiting the parties from taking the child to any "health care provid-

er" other than the agreed-to pediatrician, Dr. Burton. Appellee argues the decree is consistent with the mediated settlement agreement.

The mediated settlement agreement states,

> The parties will jointly choose the Child's pediatrician from the list of providers under Mother's current employer provider health insurance plan. Neither party will take the Child to a healthcare provider without first notifying the other at least forty-eight (48) hours in advance so they may attend the appointment if they so desire.

The divorce decree states,

> The Court finding that the parties have selected Todd M. Burton, M.D. as the child's pediatrician, it is ORDERED AND DECREED that neither party shall be allowed to take the child to any other physician or health care provider, save and except for Dr. Burton or in his absence, one of his associates.

When appellant objected to this part of the decree as not being part of the mediated settlement agreement, the trial court explained to appellant that the court interpreted the mediated settlement agreement as limiting the parties' choice of health care provider to the agreed pediatrician, Dr. Burton.[3]

---

3. At the hearing on the motion for new trial, appellant restated her objection that the decree did not follow the mediated settlement agreement. The trial court disagreed with appellant and, referring to the mediated settlement agreement, stated:

> Listen to me, okay? I've read this paragraph. This paragraph does not give either parent the ability to take this child to any health-care provider that they want to provided they give forty-eight hours notice. It says that—the pertinent sentence—you know, the very first one is the child will—the parties will jointly choose the child's pediatrician from the list of providers under

the mother's current employer's provider health insurance plan.

> So right—the first rattle out of the box you have a limitation as to who will be the health-care provider for this child and the process for selecting that.

> Then we have the neither party will take the child to a health-care provider without first notifying the other at least forty-eight hours in advance, and the rest of the sentence so they may attend the appointment if they so desire.

> . . . .

> It is not I'm going to take this kid to the health-care provider that I choose if I give

We conclude the trial court misinterpreted the mediated settlement agreement. The agreement may limit the parties' choice of pediatrician to Dr. Burton, but it does not prohibit them from taking the child to any other healthcare provider. Nor does the agreement purport to define "healthcare provider" as the agreed-to pediatrician.

The express terms of the mediated settlement agreement provide for the parties using multiple healthcare providers:

> Each party shall pay fifty percent (50%) of all uninsured medical expenses for the Child, including deductibles, except if a party takes the Child to an out-of-network provider under the primary health insurance, in which event that party is responsible for one hundred percent (100%) of the associated uncovered medical expenses associated with that visit. All other health insurance provisions in the Temporary Orders will be incorporated in the Agreed Final Decree of Divorce.

The mediated settlement agreement required the pediatrician be covered by the primary health insurance, so the only way for this provision to have any application is if the parties have the ability to take the child to a healthcare provider other than the pediatrician. Part of the temporary orders incorporated in the mediated settlement agreement and also included in the divorce decree provides for the parties use of multiple healthcare providers:

> *Designated Health–Care Providers.* IT IS ORDERED that, except in emergency situations, the parties shall utilize only those health-care providers for the child who are designated as participants under the parties' respective health-care plans, unless otherwise mutually agreed by the parties. In the event either party utilizes a health-care provider not designated as a participant, except in emergency situations, it is ORDERED that that party shall be responsible for the payment of all health-care expenses associated with the non-designated health-care provider's services which are not covered by insurance but would have been covered by insurance had that party used a designated service provider for the medical care of the child.

Nothing in the mediated settlement agreement limits the parties to the agreed-to pediatrician as the sole healthcare provider. We conclude the divorce decree's limitation on healthcare providers is contrary to the terms of the mediated settlement agreement.

## Discretion of the Court

We must next determine whether the trial court had authority to include provisions in the divorce decree that were contrary to the mediated settlement agreement. Appellant argues the trial court had no discretion except to enter judgment in strict accordance with the terms of the mediated settlement agreement. Appellee argues the trial court had the discretion not to enter judgment on the mediated settlement agreement if it was not in the best interest of the child.

Section 153.0071 contains provisions for both arbitration and mediated settlement agreements. For arbitration, section 153.0071(b) gives the trial court discretion not to enforce the arbitrator's award if "the court determines at a non-jury hearing that the award is not in the best interest of the child." TEX. FAM. CODE ANN. § 153.0071(b) (Vernon 2002). The provisions on mediated settlement agreements, however, contain no exception for

you forty-eight hours notice. It's he's got a doctor's appointment on Thursday. If you want to come, you can be there. That's what this sentence is for.

the agreement's not being in the best interest of the child. *See id.* § 153.0071(c)-(f); *see also In re Circone,* 122 S.W.3d 403, 407 (Tex.App.-Texarkana 2003, orig. proceeding) ("Under the terms of this statute, the trial court had no authority to go behind the signed agreement of the parties . . . .").

Appellee argues the authority not to enforce the mediated settlement agreement lies in section 153.007, which governs "a written agreement containing provisions for conservatorship and possession of the child." [4] TEX. FAM. CODE ANN. § 153.007(a) (Vernon 2002). Appellee argues section 153.007 applies to all agreements concerning conservatorship, including those reached through mediation under section 153.0071. Section 153.007(d) provides, "If the court finds the agreement is not in the child's best interest, the court may request the parties to submit a revised agreement or the court may render an order for the conservatorship and possession of the child." Appellee asserts the court followed section 153.007(d) when it varied from the mediated settlement agreement in the divorce decree.

 We disagree that section 153.007 applies to a mediated settlement agreement. A fundamental rule of statutory construction is that a more specific statute controls over a more general one. *Hori-*

zon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 901 (Tex.2000); *City of Dallas v. N. by W. Entertainment, Ltd.,* 24 S.W.3d 917, 919 (Tex.App.-Dallas 2000, no pet.). Section 153.0071 deals specifically with mediated settlement agreements, while section 153.007 deals generally with agreements "containing provisions for conservatorship and possession of the child." Accordingly, we conclude section 153.007 does not apply to mediated settlement agreements under section 153.0071.

 The public policy of the State of Texas is that the best interest of the child is the primary consideration of the court in conservatorship issues. TEX. FAM. CODE ANN. § 153.002 (Vernon 2002). An agreement on conservatorship issues that is not in the child's best interest violates public policy and is unenforceable. *See Leonard v. Lane,* 821 S.W.2d 275, 278 (Tex.App.-Houston [1st Dist.] 1991, writ denied) (agreement not to seek future increase in child support unenforceable as violation of public policy); *Hill v. Hill,* 819 S.W.2d 570, 572 (Tex.App.-Dallas 1991, writ denied) (application of contract law to child-support agreement in manner that was not in child's best interest violated public policy). A trial court has authority not to enforce illegal provisions in mediated settlement agreements. *See In re Calderon,* 96 S.W.3d 711, 722 (Tex.App.-

---

4. Section 153.007 states:
 (a) To promote the amicable settlement of disputes between the parties to a suit, the parties may enter into a written agreement containing provisions for conservatorship and possession of the child and for modification of the agreement, including variations from the standard possession order.
 (b) If the court finds that the agreement is in the child's best interest, the court shall render an order in accordance with the agreement.
 (c) Terms of the agreement contained in the order or incorporated by reference

 regarding conservatorship or support of or access to a child in an order may be enforced by all remedies available for enforcement of a judgment, including contempt, but are not enforceable as a contract.
 (d) If the court finds the agreement is not in the child's best interest, the court may request the parties to submit a revised agreement or the court may render an order for the conservatorship and possession of the child.

 TEX. FAM. CODE ANN. § 153.007 (Vernon 2002).

Tyler 2003, orig. proceeding [mand. denied]) (trial court had authority not to enforce void venue provision in mediated settlement agreement); *In re Kasschau,* 11 S.W.3d 305, 311, 312–313 (Tex.App.-Houston [14th Dist.] 1999, orig. proceeding) (trial court had authority not to enforce mediated settlement agreement requiring performance of criminal act). However, the trial court has no authority to enter a judgment that varies from the terms of the mediated settlement agreement. *Cf. Cooper v. Bushong,* 10 S.W.3d 20, 26 (Tex.App.-Austin 1999, pet. denied) (trial court lacked authority to modify arbitration award under section 153.0071 to reduce child-support award because of party's litigation costs); *Keim v. Anderson,* 943 S.W.2d 938, 946 (Tex.App.-El Paso 1997, no pet.) (trial court lacked authority to include terms and provisions in divorce decree not contained in parties' mediated settlement agreement on division of marital estate).

In this case, the trial court had no discretion to enter judgment that varied from the terms of the mediated settlement agreement, and we conclude the trial court abused its discretion by doing so. Furthermore, the trial court made no findings that the agreement was illegal or violated public policy. Accordingly, we render judgment that the divorce decree be modified: (1) by providing that during their respective periods of possession, the parties shall each have the right to consent for the child to medical and dental care not involving an invasive procedure; (2) by deleting the provision that the parties have the joint right to consent for the child to medical and dental care not involving an invasive procedure; and (3) by deleting the provisions prohibiting the parties from taking the child to any healthcare provider other than their agreed-on pediatrician. We resolve appellant's first and second issues in her favor.

## IMMUNIZATIONS

In her third issue, appellant asserts the trial court erred in determining that appellee should have the final decision on all matters relating to immunization of the child. In the mediated settlement agreement, the parties agreed, "The issues of rights and duties regarding the Child's immunizations will be tried before the Court if not resolved by agreement beforehand." The issue of immunizations was not resolved beforehand. The divorce decree states, "After hearing the testimony and argument on June 4, 2003, the Court announced that Respondent, Thomas Howard Udall, after consultation with Ruth about immunizations or inoculations, and attempting to reach a joint decision, would have the sole right to make decisions regarding immunization of the child. It is therefore, ORDERED AND DECREED that Thomas shall have the exclusive right to make decisions regarding the child's immunizations." In the findings of fact and conclusions of law, the trial court found and concluded that it was in the child's best interest for appellee to make decisions concerning immunization of the child, but only after consulting with appellant in an attempt to reach a joint decision.

Appellant first argues the trial court erred by not hearing evidence at the prove-up hearing before originally deciding that appellee would have the final say on the child's immunizations. This issue is moot because the trial court agreed a hearing was required, and the court granted appellant's motion for new trial on this issue and held an evidentiary hearing on the immunization issue.

On appeal, appellant argues "that the trial court ... utilized the hearing on the motion for new trial to bootstrap support for his predetermined ruling." We dis-

agree. The record shows the trial court realized the parties did not have a hearing on the immunization issue, and he granted the motion for new trial to permit them to present evidence on that issue. After hearing the evidence, the trial court rendered its decision based on the evidence.[5] Nothing in the record shows the trial court used the hearing "to bootstrap support for his predetermined ruling."

 The parties agree that the standard of review of this issue is abuse of discretion. A court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985); *Burns v. Burns*, 116 S.W.3d 916, 921 (Tex.App.-Dallas 2003, no pet.). In applying the abuse of discretion standard, reviewing courts defer to the trial court's factual determinations; a reviewing court does not engage in its own factual review but decides whether the record supports the trial court's resolution of factual matters. *State v. $217,590.00 in U.S. Currency*, 18 S.W.3d 631, 633–34 (Tex.2000). A reviewing court instead determines only whether the trial court properly applied the law to the facts in reaching its legal conclusion. *Id.* A trial court does not abuse its discretion when it makes its decision on conflicting evidence. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Burns*, 116 S.W.3d at 921.

The evidence in this case shows that before their separation, the parties had both researched the issue of the potential harmful effects of immunizations and, at appellant's insistence, agreed not to immunize the child for one year to see if the allegations about the dangers of immunizations were proven or disproved. After the divorce was filed, appellee had the child immunized. Before doing so, appellee telephoned the manufacturer of one of the shots to make sure the injection was practically mercury-free before consenting to the child's immunization. The record also shows appellee consented to the child's being over-immunized when he consented to the child receiving an immunization the nurse told appellee the child needed; however, the immunization was not necessary because the child had already received that immunization. Appellee testified that appellant may be better informed and have more information about immunizations than he. Appellant had concerns about the child being immunized because she and her brother had both suffered severe reactions to immunizations. Appellant was also concerned that the child may have had a reaction to an immunization because "[n]ine days later he went into a crying bout that lasted almost an hour with sweats, and he was inconsolable." Appellee testified he would consider appellant's input before deciding whether the child should be immunized. Appellant testified she would not object to the child's receiving the immunizations required by the schools "as long as they're administered properly."

The evidence in this case is conflicting as to the best interest of the child regarding which parent should make the final decision concerning immunizations, and it

---

5. At the conclusion of the hearing, the trial court stated:

Therefore, it is in [the child's] best interest that his mother and his father consult with one another with respect to immunizations and inoculations and attempt to arrive at a joint decision with respect to that outcome. But in the event that they cannot, one person has to be able to make that decision. I believe from the evidence that I've heard in this case that it is in William's best interest that his father be the person who makes that decision, so that will be the person who is reflected in the decree to make said decision.

contains evidence supporting the trial court's resolution of this factual issue. Accordingly we conclude the record does not show the trial court abused its discretion in finding it was in the child's best interest for appellee to have the final decision regarding immunization of the child. We resolve appellant's third issue against her.

## CONCLUSION

We modify the trial court's judgment and affirm the judgment as modified.