# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-06-00329-CV
---

**Toni Bunton, Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. D-1-FM-04-007514, HONORABLE DARLENE BYRNE, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

Toni Bunton appeals from the trial court's termination of her parental rights to her three children. She contends that the termination of her parental rights was improper because it was based on the terms of a mediated settlement agreement with which she had substantially complied and because the evidence is legally and factually insufficient to support the trial court's finding that termination is in the best interest of the children. We affirm.

Bunton has three children, A.B., D.B., and T.A. In November 2004, the Texas Department of Family and Protective Services received a report that Darrell Allen, Bunton's then boyfriend and the father of T.A., broke into Bunton's home and threatened her with a knife in view of the children.[1] The children were ultimately removed from the home due to the Department's

---

[1] In November 2004, Bunton and her children were living with Bunton's mother, Brenda. Brenda has an extensive history with the Department, including the removal of her own children on more than one occasion due to neglect and physical abuse. Bunton was permanently removed from Brenda's home and aged out of the foster care system when she was 18 years old.

concerns over the history of domestic violence between Bunton and Allen and the children's living conditions in the home.

The Department developed a plan to reunite Bunton with her children that required Bunton to attend therapy, anger-management classes, and supervised visitations with her children. However, according to Cory Jones, the Department caseworker assigned to the case, Bunton missed "40 to 50 percent of her visits" with the children as well as several therapy sessions. Jones testified that Bunton did, however, complete anger-management classes. On October 25, 2005, Bunton voluntarily signed an irrevocable affidavit of relinquishment of parental rights, but the affidavit was not filed at this time. Instead, on November 5, 2005, Bunton and the Department entered into a Mediated Settlement Agreement in which the Department agreed to forestall action on the affidavit of relinquishment in favor of the plan of reunification provided that Bunton complied with the requirements of the mediated settlement agreement. Under the agreement, Bunton was required to:

- obtain housing approved by the Department by or before February 1, 2006, and provide the Department proof of a lease lasting at least six months;

- attend visitation with the children once a week for a minimum of one hour each week, obtain transportation to the visits, and call the caseworker 24 hours in advance of each visit to confirm her attendance;

- attend individual therapy with a therapist approved by the Department once a week beginning the week of November 15, 2005, until successfully discharged from therapy;

- maintain employment and provide actual proof of employment to the Department in writing from her employer; and

- attend family therapy with A.B. once she had established housing.

2

The parties agreed that if Bunton did not perform these actions, the Department would file Bunton's signed affidavit of relinquishment and proceed to terminate her parental rights.

Bunton violated the terms of the agreement by failing to obtain housing approved by the Department and by missing several visits with the children as well as therapy sessions. As a result, the Department filed suit to terminate Bunton's parental rights to the children. On May 22, 2006, the trial court held a bench trial and heard testimony from several witnesses, including Bunton, caseworker Jones, Bunton's sister, and a volunteer for CASA (Court Appointed Special Advocates) assigned to the case. The mediated settlement agreement and Bunton's affidavit of relinquishment were admitted as evidence. The trial court found by clear and convincing evidence that Bunton had voluntarily signed an irrevocable affidavit of relinquishment of parental rights and that termination of parental rights was in the best interest of the children.

On appeal, Bunton argues that the trial court erred by terminating her rights because the evidence was legally and factually insufficient to establish that she "failed to substantially comply with the terms of the mediated settlement agreement."

To prevail in a termination suit, the Department must prove its allegations by clear and convincing evidence. *See* Tex. Fam. Code Ann. § 161.001 (West Supp. 2006). The appellate standard for reviewing a termination finding is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency). In a legal sufficiency review, we must disregard any evidence the jury reasonably could have disbelieved. *See J.F.C.*, 96 S.W.3d at 266. In a factual sufficiency review,

3

we may weigh the disputed evidence to determine if it is "so significant" that a fact finder could not reasonably have formed a firm belief or conviction on the challenged finding. *Id.*

The parties agreed that, under the terms of the mediated settlement agreement, the Department would file Bunton's signed affidavit of relinquishment and proceed to termination if Bunton:

- failed to obtain Department-approved housing by February 1, 2006;

- missed two visits with her children;

- was unsuccessfully discharged from individual therapy;

- was unemployed at any time after November 4, 2005, for 30 consecutive days; and

- failed to attend or participate in individual or family therapy.

It is undisputed on appeal that Bunton failed to obtain Department-approved housing by February 1 and that she missed two visits with her children and two individual therapy sessions. However, Bunton contends that she "substantially complied" with the agreement. She argues that she obtained housing on February 9, shortly after the February 1 deadline, and that the two missed visits were not her fault. She also argues that although she missed two therapy sessions, two misses out of nearly thirty sessions is not significant and should not affect her contention that she substantially complied with the requirements of the mediated settlement agreement.

Bunton asserts that substantial compliance with the terms of the mediated settlement agreement should prevent the Department from pursuing termination with the affidavit of relinquishment. She advanced this argument at the termination hearing and again at the hearing on

4

her motion for new trial. At the hearing on the motion for new trial, counsel for the Department argued:

> It's our position that Ms. Bunton did not comply with the terms of the mediated settlement agreement, and that the mediated settlement agreement does not provide for substantial compliance to be sufficient. The mediated settlement agreement was drafted specifically to address the issues which were preventing the children from being able to be reunified with Ms. Bunton. She was not in compliance with her service plan. The Department negotiated with Ms. Bunton. The mediated settlement agreement was drafted. It complies with the statute. And the—Ms. Bunton was aware that when she executed the affidavit of relinquishment, that she would have to comply with all the requirements in the mediated settlement agreement or the Department could go forward to terminate her parental rights.

The mediated settlement agreement provided a means for Bunton to have another opportunity to demonstrate that reunification would best serve her children's interest despite the fact that she had agreed to relinquish her rights by signing the affidavit of relinquishment. The parties negotiated the terms of the mediated settlement agreement and agreed that non-compliance would be determined by Bunton's failure to perform certain actions. The agreement does not state or imply that substantial compliance is permissible.

A trial court has no authority to enter any judgment that varies from the terms of a mediated settlement agreement. *See In the Interest of R.B.*, 200 S.W.3d 311, 314 (Tex. App.—Dallas 2006, pet. denied); *Garcia-Udall v. Udall*, 141 S.W.3d 323, 332 (Tex. App.—Dallas 2004, no pet.). Nevertheless, Bunton asks this Court to find as a matter of law that substantial compliance with the terms of the mediated settlement agreement is sufficient. A similar argument was advanced in *In re D.H.L.*, No. 04-04-00876-CV, 2005 Tex. App. LEXIS 9288, at *6 (Tex. App.—San Antonio Nov. 9, 2005, no pet.). In that case, the trial court entered an order

5

requiring Ortiz and Hopkins, the parents of D.H.L., to comply with the Department's service plans and warned them that their failure to "fully comply" with the court's order may result in the termination of their parental rights. *Id.* at *3-4. The Department's service plan required Ortiz and Hopkins to perform certain actions, including visiting D.H.L. weekly and attending counseling. *Id.* at *5-6. After both Ortiz and Hopkins missed numerous visits with D.H.L. and counseling sessions, their parental rights were terminated based on the trial court's finding that they failed to comply with the court order. *Id.* at *4. On appeal, both Ortiz and Hopkins argued that they "substantially complied" with the court order by, in Ortiz's case, "completing the anger management course and domestic violence classes without the Department's help and at her own expense" and in Hopkins's case, "by completing a drug assessment, drug counseling, a psychological evaluation, a domestic violence program, and an anger management program." *Id.* at *6-7. The court held that neither argument by Ortiz or Hopkins negated the undisputed facts that they missed numerous visits with D.H.L. and counseling sessions. *Id.* at *7. It stated, "[m]ore importantly, neither party has provided, and we have not found, any legal authority for the premise of their arguments that 'substantial compliance' renders undisputed evidence of a failure to comply somehow insufficient to support a trial court's finding." *Id.*

In this case, we decline to address whether substantial compliance with the terms of a mediated settlement agreement placing conditions on the use of an affidavit of relinquishment of parental rights can ever be sufficient as a matter of law when the parties have not expressly agreed to a substantial compliance standard. Instead, we note that, even if substantial compliance were enough, the evidence is conclusive that Bunton did not substantially comply with the terms of the agreement in this case. For example, although Bunton obtained housing on February 9, shortly after

6

the February 1 deadline, the apartment was never approved by the Department. Jones testified that when she visited the apartment on April 13, "[Bunton] had her bed propped up against the wall in her bedroom, and then the childrens' beds in their bedroom, but there was no electricity, . . . . I don't see how [Bunton] could have been living there day to day." Jones also testified that there was "no toothpaste, no dishes, that I can think of. I didn't look in the refrigerator, but the kitchen was empty." When asked at the termination hearing whether the Department had ever approved this housing, Bunton answered, "[n]ot that I know of, no." Bunton also testified that she frequently stayed with a friend instead of at her apartment.

Similarly, the evidence is conclusive that Bunton did not comply with the requirement that she attend visitation with her children. The terms of the agreement required Bunton to confirm visitation with the Department 24 hours in advance. It also provided that if Bunton missed two visits, the Department would file her affidavit of relinquishment. Bunton contends that she missed a visit on March 3 because "the transporter had called me and told me that they had a Court hearing or whatever, and it was going to be scheduled for next week." She also contends that she missed a visit on March 17 because "when I went to the Department, no one was there." However, Jones testified that both a visitation and a permanency review hearing were scheduled for March 3 and that Bunton did not call to confirm her visit the day before or explain why she did not attend the visit and the hearing. Jones also testified that the visit on March 17 was canceled after Bunton did not return several phone calls from Jones concerning the time and location of the visit.

Bunton also contends that the evidence is legally and factually insufficient to support the trial court's finding that termination is in the best interest of the children. Although it is undisputed that the children are bonded with Bunton and want to be reunited with her, the affidavit

7

signed by Bunton states that "it is in the best interest of the children that the children be placed for adoption by the Texas Department of Family and Protective Services."  An affidavit of relinquishment, in and of itself, can provide sufficient evidence that termination is in the child's best interest.  *Lumbis v. Texas Dep't of Protective & Regulatory Servs.*, 65 S.W.3d 844, 851 n.1 (Tex. App.—Austin 2002, pet. denied) (citing *Stubbs v. Stubbs*, 685 S.W.2d 643, 645-46 (Tex. 1985)); *Brown v. McLennan County Children's Protective Servs.*, 627 S.W.2d 390, 394 (Tex. 1982); *Ivy v. Edna Gladney Home*, 783 S.W.2d 829, 833 (Tex. App.—Fort Worth 1990, no writ).  The record also contains testimony from caseworker Jones that termination is in the best interest of the children and testimony from the CASA volunteer that Allen, whose violence against Bunton prompted the initial removal of the children, had recently been released from prison and "has gotten Ms. Bunton's number and started contacting her again, and that could escalate again."  Thus, the record contains sufficient evidence upon which a fact-finder could reasonably form a firm belief or conviction that termination is in the best interest of the children.

   Affirmed.


                 _____

                 G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:  May 16, 2007

8