

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00119-CV

———————————————

IN THE INTEREST OF I.G., A CHILD

On Appeal from the 322nd District Court
Tarrant County, Texas
Trial Court No. 322-679084-20

Before Sudderth, C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

Father appeals from an order naming the Department of Family and Protective Services as I.G.'s permanent managing conservator. The Department took possession of ten-year-old I.G. from her mother after Mother had abandoned the child at a store for a couple of hours and was then jailed for child endangerment. Upon the Department's petition seeking to be named I.G.'s permanent managing conservator, among other things, Father entered into an agreement with the Department, as well as I.G.'s attorney and guardian ad litem, under which Father acquiesced to the Department's being named I.G.'s permanent managing conservator upon four conditions. But the trial court expressly declined to order at least two of the conditions in accordance with the parties' agreement—and, according to Father, omitted the other two from its final order, prompting Father's appeal.[1] We affirm the trial court's order.

## Parties' Status at Trial

At trial, an OCOK[2] permanency specialist working with the family testified that Mother had mental-health issues and was not ready to have possession of I.G. under a

---

[1]Mother has not appealed.

[2]OCOK is an acronym for Our Community Our Kids, a private provider of community-based care that contracts with the Department to provide "foster care case management, kinship, and family reunification services" in parts of the State. *See* Tex. Dep't of Family & Protective Servs., https://content.govdelivery. com/accounts/TXDFPS/bulletins/27e68be (last visited Aug. 2, 2021); *see also* Tex. Fam. Code Ann. §§ 264.151–.170 (describing and providing requirements for

2

monitored return because Mother was not medication compliant and had not seen I.G. in four months. Although Father had not seen I.G. in person in over seven years, and I.G. could not remember ever seeing him in person, he claimed that Mother had purposefully kept the child away from him. Father had been late in starting his services, but he had begun counseling in the two weeks before trial and had "been visiting" virtually[3] with I.G. Father was living with his brother out of state, and the Department had not yet completed an in-person study on the home or a background check on the brother. In addition, Father had not taken any parenting classes, and the permanency specialist testified that Father would need to do so before the Department would consider returning the child to him. The Department's goal was to have I.G. "be able to go live with her father at some point in the future or [for] her mother [to] get stable and [I.G.] live with her."

## Rule 11 Agreement and Final Order

During the permanency specialist's testimony about Father, the trial judge asked, "[H]ave y'all not discussed resolving and settling this?" Father's counsel replied, "[W]e have, Judge, as far as [Father] is concerned. [The Department's counsel] and I have discussed he's willing to agree to the PMC order. He just asked for four conditions to be included in that order, and [the Department's counsel] has

---

Department oversight of private community-based-care system for the State of Texas).

[3]OCOK facilitated virtual visits with Father because I.G. "is not in close proximity" to his out-of-state residence.

3

said that they would agree to that." The permanency specialist answered "Yes" when Father's counsel asked if she agreed to (1) continue family counseling[4] between Father and I.G., (2) "consult with" Father about I.G.'s medical care, (3) "consult with" Father about I.G.'s educational needs, and (4) "continue to set up parent–child visits on at least a weekly basis" between I.G. and Father.

After the Department rested, Father's counsel declined to call any witnesses and told the trial court, "We are in agreement with the PMC order and just ask for those -- those four orders that I had mentioned before so we rest." I.G.'s ad litem told the trial court that I.G. wanted "to stay in foster care until she knows . . . [F]ather better and knows that -- trust[s] that he will take care of her and knows what she needs." But the ad litem also asked the trial court to grant "the specific items that [Father's counsel] has brought forth on [Father's] behalf that *we've* agreed to already as counsel in the best interest of the child." [Emphasis added.] The Department's counsel told the trial court, "[W]e do agree to" the agreement as "recite[d]" by Father's counsel.

When the trial court allowed Father's counsel to restate the agreement, she asked for the court to order that OCOK continue to provide family counseling, that "parent–child visits continue at least weekly," and that Father "be consulted prior to any medical decisions with the exception of emergency treatment. Then consultation

---

[4]The permanency specialist believed that I.G. had a better chance of building a positive relationship with Father if the family therapy were to continue.

4

may occur within 24 hours. And we ask for an order that [Father] be consulted prior to any education decisions." The trial court asked, "What does that mean, 'consulted'?" Counsel responded, "Just to have the discussion of -- about educational decisions such as in-person learning versus virtual learning. More just so that he knows what's going on with her education."

Ultimately, the trial court stated that it would not order the Department to "consult" with Father before making educational decisions for I.G. or before consenting to elective medical treatments for her. The trial court also refused to expressly order weekly parental possession and access by Father; however, the trial court stated on the record that although initial visitation would be virtual, "the Department will also set up in-person visits for . . . [F]ather so he can get acclimated and accomplish what the -- services he needs. . . . I'll leave that up to the Department."

The final order named the Department as I.G.'s permanent managing conservator and named both parents possessory conservators with possession of I.G. "at times mutually agreed to in advance by the parties" or, without such agreement, supervised visitation only upon 48-hours advance notice to the Department and on conditions and terms approved by the Department. It did not expressly include any of the provisions of the Rule 11 agreement.

## Analysis

Father contends in a single issue that the trial court abused its discretion by not incorporating three parts of the Rule 11 agreement into its final order: weekly visits and prior consultation with Father before making educational and medical decisions.[5] The Department concedes that the parties agreed to a valid Rule 11 agreement for weekly visits between Father and I.G. but asserts (1) that because the agreement is enforceable independently from the final order, there is no need to reform the order and also (2) that the final order encompasses the weekly-visit agreement because it provides for visits as agreed to in advance by the parties. As to consultation about medical and educational matters, the Department contends that the trial court was not obligated to follow that part of the agreement because what the parties meant by "consult" is too vague or, alternatively, that the trial court's incorporation into the final order of the statutory duty to inform under Family Code Section 153.076(a) is sufficient to meet this requirement. Tex. Fam. Code Ann. § 153.076(a).

### Applicable Law and Standard of Review

Rule 11, which provides that an agreement between attorneys or parties will be enforced if "it be made in open court and entered of record," Tex. R. Civ. P. 11, applies in conservatorship cases, *In re A.R.*, No. 06-20-00016-CV, 2020 WL 4229328, at *1 (Tex. App.—Texarkana July 24, 2020, no pet.) (mem. op.). Generally, a trial

---

[5]Father does not challenge the order's omission of a counseling requirement, instead asserting that he would challenge that omission in a motion for judgment nunc pro tunc filed in the trial court.

court has a ministerial duty to enforce a valid Rule 11 agreement. *In re S.R.S.*, No. 12-20-00130-CV, 2020 WL 4463122, at *3 (Tex. App.—Tyler July 15, 2020, no pet.) (mem. op.); *Scott–Richter v. Taffarello*, 186 S.W.3d 182, 189 (Tex. App.—Fort Worth 2006, pet. denied). But under the Family Code, an agreement concerning conservatorship and possession of a child must be enforced by the trial court only if the court finds that the agreement is in the child's best interest. *See* Tex. Fam. Code Ann. § 153.007(a)–(b); *In re D.R.G.*, No. 14-16-00023-CV, 2017 WL 2960026, at *3 (Tex. App.—Houston [14th Dist.] July 11, 2017, no pet.) (mem. op.); *see also* Tex. Fam. Code Ann. § 153.002 ("The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child."); *cf. Garcia–Udall v. Udall*, 141 S.W.3d 323, 330–32 (Tex. App.—Dallas 2004, no pet.) (distinguishing agreed parenting plan on conservatorship and possession from mediated settlement agreement that meets requirements of Family Code Section 153.0071(d)).

We review a trial court's best-interest finding in conservatorship cases for an abuse of discretion, with reference to the *Holley* factors. *See C.H. v. S.L.*, No. 02-16-00386-CV, 2018 WL 4925318, at *8–9 (Tex. App.—Fort Worth Oct. 11, 2018, no pet.) (mem. op.); *see also Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These nonexclusive factors include (1) the child's desires, (2) the child's emotional and physical needs now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking

7

custody, (5) the programs available to assist these individuals to promote the child's best interest, (6) the plans for the child by these individuals, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the parent's acts or omissions. *Holley*, 544 S.W.2d at 371–72. Under this standard, legal and factual sufficiency challenges[6] are not independent grounds of error but factors used to determine whether the trial court abused its discretion. *In re S.M.A.*, No. 11-19-00265-CV, 2020 WL 508267, at *1 (Tex. App.—Eastland Jan. 31, 2020, no pet.) (mem. op.).

The evidence here does not address all the *Holley* factors, but it does encompass some of them. Although Father does not expressly challenge the trial court's implied finding that the nonincorporated parts of the agreement are not in I.G.'s best interest, such a challenge is a subsidiary question fairly included in his issue. *See* Tex. R. App. P. 38.1(f); *see also* Tex. Fam. Code Ann. § 263.404(a) (providing that trial court may appoint the Department as a permanent managing conservator without terminating a parent's rights if it determines that "appointment of a parent as managing conservator would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development" and that it

---

[6]When a parent's rights have not been terminated, the usual civil legal and factual sufficiency standards, rather than the clear-and-convincing standards applicable to a termination decision, apply. *See In re B.O.*, No. 02-16-00485-CV, 2017 WL 2590571, at *23 & n.26 (Tex. App.—Fort Worth June 15, 2017, no pet.) (mem. op.).

is not in the child's best interest to appoint a relative managing conservator), § 263.404(b) (providing that trial court shall consider child's needs and desires, among other things, in making this determination).

**Best-interest Evidence**

According to the ad litem, I.G. was very active in her foster home and doing well there; she was excited to be attending in-person school again. I.G. told the ad litem that she was not ready to go with Father and did not really know him. I.G. had said that "it's been a pretty rocky start trying to communicate." She did not understand the concerns that Father had brought up in counseling; I.G. did not go into detail "but explained that it was some type of conflict between the issue of something related to the parenting issues." Father had admitted to the ad litem that he was not ready for I.G. to come live with him until "he gets a better handle on what she needs."

The permanency specialist testified that I.G. has asthma but that it was "under control" in foster care. I.G. also has severe allergies and takes several medications every day, including ADHD medication. I.G. was in counseling and behavioral therapy and had been experiencing some depression symptoms because of the separation from Mother.

I.G. told the permanency specialist that she did not feel like she knew Father and "expressed a lack of trust in" him "because his story [had] changed to last seeing her when . . . she was 3 versus 3 months." I.G. had also reported that Father "was

9

calling her a liar and not trusting in her due to a . . . situation regarding [I.G.'s] schoolwork and grades."

**Possession**

The parties agreed to "continue" visits, which had been virtual. At trial, the judge explained the basis for his ruling on visitation as follows:

> I'm going to allow [Father] to have access by virtual access as . . . discussed.
>
> . . . .
>
> Now as guidance on the ruling, . . . I would like to see -- to have him progressively move forward. Then he should have more than just virtual visits. He needs to start visiting with the -- the child, and -- at least under supervised visitation so that the child is used to seeing him and to talk to the child. But I'll leave it open like that.

The trial judge asked the Department's attorney if she could draft an order based on "that global-type ruling."

The part of the order regarding possession states, "**IT IS ORDERED** that the conservators shall have possession of the child at times mutually agreed to in advance by the parties and, in the absence of mutual agreement, as specified in **Attachment A** to this order, which is incorporated herein as if set out verbatim in this paragraph." Attachment A provides for "supervised visitation with the child, upon the terms and conditions agreed to in advance by the managing conservator, provided that the managing conservator or other placement shall have 48 hours advance notice of

10

intent to exercise the visitation.  The managing conservator or designee shall supervise the visitation."

It appears that, rather than attempting to limit Father's possession to weekly virtual visits only, the trial court wanted the order's language to allow for eventual in-person visits as agreed to by the Department once Father and I.G. had established a bond and it was appropriate and convenient to do so.  Because the Department had already agreed to weekly virtual visits, the order encompasses that agreement by allowing visits "at times mutually agreed to in advance by the parties."  Moreover, even if the order could not properly be construed as incorporating the parties' agreement, the trial court could have determined that it was in I.G.'s best interest to leave the timing of visits flexible and by contemporaneous agreement so as to facilitate the Department's and Father's working together to get to the point at which Father could have in-person supervised visits with I.G.  *Cf.* Tex. Fam. Code Ann. § 263.107(c) (providing that in determining proper visitation when Department is child's temporary managing conservator, Department must consider (1) child's age, safety, and best interest; (2) the parents' desires regarding visitation; (3) the parents' and child's location; and (4) the Department's resources pertinent to supervision and transportation).

Therefore, we conclude that there is no need to reform the trial court's order with regard to visitation.

**Consultation**

Regarding the consultation part of the agreement, the trial court explained, "[Father] needs to be consulted about things that occur. However, I'm going to leave it with the Department to make decisions concerning the education and -- and decisions concerning elective surgery. That's still with the Department."

The Department's default right to make such decisions is codified in Family Code Section 153.371, which provides that

> [u]nless limited by court order or other provisions of this chapter, . . . the Department [when] appointed as a managing conservator . . . has . . . (4) the right to consent for the child to medical, psychiatric, psychological, dental, and surgical treatment and to have access to the child's medical records; . . . [and] (10) the right . . . to make decisions regarding the child's education.

*Id.* § 153.371(4), (10). Additionally, each conservator of a child must inform the others "in a timely manner" of significant information concerning the child's health, education, and welfare. *Id.* § 153.076(a).

The Department contends that the final order complies with the agreed-to consultation conditions because it orders the parties to comply with Family Code Section 153.076(a). But that section does not define "timely manner," nor does it expressly require advance notice. *See id.*; *Michels v. Zeifman*, No. 03-08-00287-CV, 2009 WL 349167, at *5 (Tex. App.—Austin Feb. 12, 2009, pet. denied) (mem. op.). Thus, the trial court's ordering the parties to comply with Section 153.076(a) does not necessarily comply with the parties' agreement contemplating prior notice to Father.

12

Regardless, the trial court did not abuse its discretion by impliedly determining that requiring the Department to consult with Father in advance before making medical and educational decisions for I.G. was not in I.G.'s best interest. Father was not familiar with I.G.'s particular needs, had not seen her in person for at least seven years, and was just starting to get to know her. I.G. was doing well in her foster home while taking daily medications and needing management of severe allergies and ADHD. Moreover, I.G. was struggling in the first couple of weeks in counseling with Father and at least perceived that he had called her a liar and that he had been untruthful to her; this is evidence that Father was not yet able to respond to I.G.'s mental-health and emotional needs that were being addressed in her individual counseling. Thus, the trial court could have determined that although Father was entitled to the mandated statutory information, requiring the Department to run all decisions by him in advance would not promote I.G.'s best interest.

We therefore conclude that there is no need to reform the final order to include the agreement to consult in advance on medical and educational decisions for I.G.

## Conclusion

Having determined that the trial court did not have a ministerial duty to include the complained-of agreed matters in its final order, we overrule Father's sole issue, and we affirm the trial court's order naming the Department as I.G.'s sole managing conservator.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: August 12, 2021