

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-21-00553-CV

**IN THE INTEREST OF L.M.C.**, a Child

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2016-CI-16354
Honorable Martha Tanner, Judge Presiding

Opinion by: Liza A. Rodriguez, Justice

Sitting: Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: February 1, 2023

MODIFIED; AFFIRMED AS MODIFIED

Mother appeals from a final order in a suit to modify the parent-child relationship, arguing the trial court erred by not rendering a final order in strict compliance with the parties' mediated settlement agreement. We sustain Mother's first issue, modify the final order, and affirm the final order as modified.

## BACKGROUND

Mother and Father are the parents of the child, L.M.C. [1] In February 2017, the trial court rendered a final judgment in a suit affecting the parent-child relationship, appointing Mother and Father joint managing conservators of the child. Almost two years later, in January 2019, Mother

---

[1]To protect the identity of the minor child, we do not refer to the parties and the child by their names in this opinion. *See* TEX. FAM. CODE. § 109.002(d).

filed a petition to modify the parent-child relationship. On July 11, 2020, the trial court signed temporary orders in the modification suit. In March 2021, the parties signed a mediated settlement agreement, which contained provisions regarding Father's possession and access to the child. In September 2021, each party filed a motion to enter a final order. The trial court held a hearing on the motions to enter and signed a final order. Mother appealed.

## DISCUSSION

We review a trial court's rendition of judgment on a mediated settlement agreement under an abuse of discretion standard. *In re Lee*, 411 S.W.3d 445, 450 (Tex. 2013); *In re S.L.E.*, No. 04-19-00092-CV, 2020 WL 1866467, at *3 (Tex. App.—San Antonio Apr. 15, 2020, pet. denied). Generally, when a mediated settlement agreement meets the requirements of section 153.0071(d)[2] of the Texas Family Code, a trial court has no discretion to render a judgment that varies from the terms of the mediated settlement agreement. *Byrd v. Byrd*, No. 04-11-00700-CV, 2012 WL 6013424, at *3 (Tex. App.—San Antonio Nov. 30, 2012, no pet.); *Garcia-Udall v. Udall*, 141 S.W.3d 323, 332 (Tex. App.—Dallas 2004, no pet.). "If a mediated settlement agreement meets the requirements of [section 153.0071(d)], a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." TEX. FAM. CODE § 153.0071(e).

---

[2]Section 153.0071(d) provides:

A mediated settlement agreement is binding on the parties if the agreement:

   (1)  provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;

   (2)  is signed by each party to the agreement; and

   (3)  is signed by the party's attorney, if any, who is present at the time the agreement is signed.

TEX. FAM. CODE § 153.0071(d).

In this case, the parties' mediated settlement agreement ("the MSA") meets the requirements of section 153.0071(d). Furthermore, Father does not argue that any exception to Section 153.0071(e)'s mandate applies. *See id.* § 153.0071(e)(1) (providing a trial court may decline to enforce a MSA when it makes certain findings, including a finding that domestic violence impaired a party's ability to make decisions and the agreement is not in the best interest of the child); *Byrd*, 2012 WL 6013424, at *5 (indicating a trial court may decline to enforce a MSA upon finding that the agreement was illegal, violated public policy, was drafted in error, or was ambiguous); *Udall*, 141 S.W.3d at 331-32 (noting a trial court has authority not to enforce illegal provisions in a MSA). Therefore, the trial court had no discretion to render a final order that deviated from the MSA. *See* TEX. FAM. CODE § 153.0071(e); *Byrd*, 2012 WL 6013424, at *5; *Udall*, 141 S.W.3d at 332.

The pertinent provision in the MSA provides:

> [Father's] extended summer possession shall occur in accordance with the SPO in the parties' July 11, 2020 Temporary Orders, except for the following: *Without written notice by the required date* specifying an extended period or periods of summer possession for that year, [Father] shall have possession of the child for *thirty consecutive days in that year beginning at 6:00 p.m. on July 7 and ending at 6:00 p.m. on August 6*[.]

(emphasis added).

Notwithstanding this provision, the trial court's final order provides in relevant part:

(d) Parents Who Reside More than 100 Miles Apart

> Except as otherwise expressly provided in this Modified Standard Possession Order, when [Dad] resides more than 100 miles from the residence of the child, [Dad] shall have the right to possession of the child as follows:

> . . . .

4. Extended Summer Possession by [Father] –

With Written Notice by April 1 – If [Father] gives [Mother] written notice by April 1 of a year specifying an extended period or periods of summer possession for that

year, [Father] shall have possession of the child for forty-two days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, as specified in the written notice. These possession periods shall begin and end at 6:00 p.m. on each applicable day.

*Without Written Notice by April 1* – If [Father] does not give [Mother] written notice by April 1, specifying an extended period or periods of summer possession for that year, [Father] shall have possession of the child for *forty-two consecutive days following his even numbered July 1-7 visitation.*

(emphasis added).

Mother argues that the final order deviates from the terms of the MSA because it provides Father forty-two consecutive days of extended summer possession when he does not give timely written notice specifying his extended period or periods of summer possession, whereas the MSA provides Father "possession of the child for thirty consecutive days in that year beginning at 6:00 p.m. on July 7 and ending at 6:00 p.m. on August 6" when he does not give timely written notice of his extended period or periods of summer possession. Father acknowledges in his brief that this provision "does not strictly comply with the MSA and it should be modified." We agree with the parties that this provision deviates from the MSA. Therefore, we sustain Mother's first issue and modify the final order to comply with the MSA.[3] *See Byrd*, 2012 WL 6013424, at *7 (modifying the trial court's judgment to comply with the terms of the MSA).

## CONCLUSION

In accordance with the MSA, the final order is modified to reflect that under the section titled, "Parents Who Reside More Than 100 Miles Apart," when Father does not give written notice by April 1 of a year, he "shall have possession of the child for thirty consecutive days in that year

---

[3]Because our resolution of Mother's first issue disposes of the appeal, we need not address Mother's remaining issues. *See* TEX. R. APP. P. 47.1.

beginning at 6:00 p.m. on July 7 and ending at 6:00 p.m. on August 6." As modified, the trial court's final order is affirmed.

Liza A. Rodriguez, Justice