**Opinion issued August 22, 2013**



In The

# Court of Appeals

For The

## First District of Texas

_____

### NO. 01-10-00368-CV
_____

**MELANIE LEIGH WALLACE, Appellant**

**V.**

**GREGORY ANGUS MCFARLANE, Appellee**

---

**On Appeal from the 312th District Court**
**Harris County, Texas**
**Trial Court Case No. 2005-27517**

---

## MEMORANDUM OPINION

Melanie Leigh Wallace appeals the trial court's final decree of her divorce from Gregory Angus McFarlane, complaining that the trial court (1) effectively granted her motion for new trial and motion to vacate the December decree when it ordered the parties to arbitration in March 2010; (2) erred and abused its discretion

by signing over her objections, a final divorce decree which contradicted and exceeded the scope of the mediated settlement agreement (MSA); (3) erred and abused its discretion by failing to order a stay of the judicial proceedings when it signed the order granting her motion to compel arbitration; and (4) erred by denying her motion to vacate or modify the final divorce decree and her motion for new trial on the basis that both motions were too general and unclear. For the reasons stated herein, we affirm as modified.

## Background

McFarlane filed for divorce on April 27, 2005, and Wallace counter-filed on May 12, 2005. After over four years of acrimonious divorce proceedings, Wallace and McFarlane eventually entered into a binding, mediated settlement agreement (MSA) on November 4, 2009. At a hearing on November 25, 2009, the trial court approved the MSA and asked McFarlane's counsel to prepare a draft of the decree based its terms. McFarlane and Wallace's respective counsels exchanged at least five drafts of the proposed decree over the course of the next month. Although the parties disagreed about some of the terms included in the initially-circulated drafts of the decree, no attempt was made to arbitrate any of these disputes prior to the entry hearing.

The trial court held an entry hearing on December 29, 2009. At that hearing, the parties informed the trial court that they were generally in agreement with

2

respect to the terms of the proposed decree, with three or four exceptions that they wanted to discuss. According to Wallace, the latest draft decree circulated by McFarlane contained numerous unauthorized changes to the parties' MSA. Attorneys for both parties and the amicus attorney representing the children discussed the challenged portions of the decree with the trial court and made hand-written changes to McFarlane's latest draft.

During one such discussion, Wallace informed the trial court that the parties had agreed to arbitrate any disputes regarding the drafting and execution of the MSA and that she was reserving her right to arbitrate these disputes. Wallace did not, however, ask for a continuance or ask the trial court to refrain from signing a final divorce decree pending such arbitration. On the contrary, Wallace's counsel advised the court that a final decree could still be signed that day and that if the arbitrator later determined that the decree differed from the terms agreed to in the MSA, he would simply file a motion for judgment nunc pro tunc to correct the error.[1] At the end of the hearing, counsel for Wallace, McFarlane, and the children initialed each page of the decree with the hand-written interlineations, and signed that version of the decree "approved as to form." The trial court signed the decree that same day (December decree).

---

[1] We note that a judgment nunc pro tunc is one rendered to correct non-substantive clerical errors after the court loses its plenary power. *See* TEX. R. CIV. P. 316 (allowing correction of clerical errors in the judgment).

3

On January 21, 2010, Wallace filed a "Motion to Vacate and Alternative Motion for Additional Orders" in which she argued that the December decree contained a misstatement of the MSA and included injunctions that had not been agreed to at mediation. Wallace asked the trial court to either modify the existing decree or vacate the decree and enter a new decree correcting certain errors. One week later, on January 28, 2010, Wallace filed a motion for new trial asking the trial court to set the December decree aside and order a new trial because the evidence was legally and factually insufficient to support the trial court's finding that the decree conformed to the terms of the MSA.

On March 2, 2010, Wallace filed a Motion to Compel Arbitration over whether the MSA required the children to attend therapy or counseling. Her motion did not challenge the validity of the December decree, nor did it raise any issues concerning any other provisions of the December decree—only the absence of an express provision requiring the children to attend therapy or counseling. After a hearing on March 9, 2010—for which there is no reporter's record—the trial court granted the motion and ordered the parties to "mediate and/or arbitrate" before Maryellen W. Hicks, the mediator responsible for the drafting of the MSA. The trial court signed the order granting Wallace's motion to compel on March 15, 2010—the same day Wallace's motion for new trial and motion to vacate were overruled by operation of law. TEX. R. CIV. P. 329b(c) (stating motions for new

trial and motions to modify, correct, or reform judgment that have not been ruled on are overruled by operation of law 75 days after judgment signed). The arbitration, which was held on March 29, 2010, was unsuccessful. Notably, March 29, 2010 was also Wallace's deadline to file her notice of appeal. TEX. R. APP. P. 26.1(a)(1) (stating that notice of appeal is due by 90th day from date final judgment signed if any party timely files motion for new trial, motion to modify judgment, or motion to reinstate).

On April 13, 2010, the trial court held a final hearing in this case. This was also the last day the trial court had plenary power and the 15th day after the deadline to file a notice of appeal in the case. At that hearing the trial court reconsidered and then denied Wallace's motion for new trial. The trial court further stated that it was also denying Wallace's motion to modify or vacate the judgment because, having denied Wallace's motion for new trial, her only remedy was a motion to modify the judgment. *See* TEX. FAM. CODE ANN. § 156.001 (West 2008) (providing that court with continuing exclusive jurisdiction may modify order providing for conservatorship of, support of, possession of, or access to child), 156.101 (West Supp. 2012) (providing grounds for modifying order establishing conservatorship or possession and access).

Wallace filed her notice of appeal later that same day. Wallace later filed a motion to extend time to file her notice of appeal in which she offered some

5

explanation for her tardy filing. *See Jones v. City of Hous.*, 976 S.W.2d 676, 677 (Tex. 1998) (stating that, under *Verburgt* rule, appellants must reasonably explain their need for an extension); *Verburgt v. Dorner*, 959 S.W.2d 615, 617 (Tex. 1997) (holding that motion to extend time is "necessarily implied" if appellant files notice of appeal within fifteen-day extension period).[2]

## Discussion

### A.    Effect of Order Granting Post-Judgment Motion to Compel Arbitration

In her first issue, Wallace argues that the trial court intended to vacate or set aside its December decree when it ordered the parties to arbitration in March 2010, and thus, it effectively granted her motion for new trial and motion to vacate the December decree at that time. Wallace is also asking this Court to hold that, because the trial court effectively granted her motion for new trial and vacated the December decree, there is no final judgment in this case, and we should order "that the arbitration process should continue until it reaches a binding, final result."[3]

---

[2]    This Court previously dismissed Wallace's appeal for want of jurisdiction based upon her failure to offer a reasonable explanation for her untimely appeal. Unbeknownst to the Court, Wallace had filed a motion for extension of time in which she explained her need for an extension, but the Court had not been made aware of it before it dismissed the appeal. The Court granted Wallace's motion for rehearing, withdrew our previous opinion and we set aside our previous judgment. TEX. R. APP. P. 49.3.

[3]    If, as Wallace argues, there is no final judgment in this case, we would have no choice but to dismiss her interlocutory appeal for want of jurisdiction.

First, the order compelling arbitration did not, as Wallace argues, direct the parties to essentially mediate or arbitrate the entire divorce proceeding again. Wallace's motion for arbitration only asked the trial court to compel the parties to arbitrate the question of whether the MSA required the children to attend therapy or counseling; she did not challenge any other aspect of the December decree. The effect of the trial court's "Order on Motion to Compel Arbitration" was merely to grant Wallace's motion to compel arbitration on this one, discrete issue.

Second, Wallace argues that it is clear from the record that the trial court intended to vacate or set aside its December decree when it granted her motion to compel arbitration based upon a statement the trial court made at the April 13, 2010 hearing. The record, however, does not support such a reading. Indeed, at hearing the trial court stated, "I didn't set aside that decree. . . ." The children's amicus attorney agreed stating, "That has not been set aside. That decree is a decree in full force and effect right now. . . ." Wallace did not express any disagreement with the trial court and the amicus attorney's statements.

We overrule Wallace's first issue.

**B.    Denial of Arbitration Rights due to Trial Court's Failure to Stay
Judicial Proceedings**

In her third issue, Wallace contends that the trial court erred and abused its discretion by failing to order a stay of the judicial proceedings when it signed the order granting her motion to compel arbitration. According to Wallace, the trial

7

court's inaction on this issue deprived her of her right to arbitration. Wallace further argues that if a trial court finds that a claim falls within the scope of a valid arbitration agreement, the court has no discretion but to compel arbitration and stay its own proceedings. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008). Thus, the trial court could only have erred in this respect if a valid arbitration agreement existed and the parties' dispute fell within the scope of that agreement.

Whether there is a valid and enforceable agreement to arbitrate is a matter of contract interpretation, and as such, is a legal question subject to *de novo* review. *See In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009). Wallace argues that the arbitration agreement included in the MSA required the parties to arbitrate their disputes regarding the drafting and execution of the MSA even after the trial court signed the final decree on December 29, 2009. McFarlane, on the other hand, contends that the MSA's arbitration agreement is inapplicable post-judgment.

The two-paragraph arbitration agreement included in the MSA provides in pertinent part that the parties agree to use mediator, Hicks, "as binding Arbitrator for any dispute that arises in the drafting and execution of this Agreement" and "to notify Hicks, in writing, of their request for her services at least ten days prior to a Court entry date. . . ." The agreement further provides that all arbitration fees are

8

due "on or at the time of entry." Based upon these provisions, and considering the arbitration agreement as a whole, it is evident that the agreement to arbitrate only applies prior to the signing of a final divorce decree. *Cf. In re Provine*, 312 S.W.3d 824, 829 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding) (concluding that MSA's arbitration agreement "plainly contemplates post-divorce disputes, as it includes matters related to the 'performance' of the agreement.") Unlike in *Provine*, McFarlane and Wallace did not agree to arbitrate any disputes over the "performance" of their respective obligations under the MSA, nor does their arbitration agreement contain any other indicia that post-judgment arbitration was contemplated and agreed to by the parties.

We further note that, although Wallace attempted to invoke the arbitration agreement at the December 29, 2009 entry hearing, her attempt to reserve her right to arbitration was insufficient. Instead of asking for a continuance in order to arbitrate her disputes prior to the signing and entry of judgment, Wallace's counsel informed the trial court: "I'm not trying to delay the Court today. I just need to reserve my client's right to arbitrate a disagreement in the mediated settlement agreement." Wallace's counsel later reiterated at that hearing: "Judge, what I would think then is that you can enter a final order today. Judge Hicks can determine if that is in any way different than the mediated settlement agreement, then we would file a motion nunc pro tunc. That's what I would suggest." The

trial court signed the final decree that day, as Wallace suggested, and the arbitration agreement expired by its own terms. Thus, by the time Wallace moved to compel arbitration in March 2010, there was no valid arbitration agreement.

Because there was no valid arbitration agreement in existence when Wallace moved to compel arbitration in March 2010, the trial court could not have abused its discretion by refusing to stay its own proceedings. *Forest Oil Corp.*, 268 S.W.3d 51, 56.

We overrule Wallace's third issue.

## C.    December Decree Contradicted and Exceeded Scope of MSA

In her second issue, Wallace argues that the trial court erred and abused its discretion by signing, over her objections, a final divorce decree that contradicted and exceeded the scope of the MSA, thereby violating her right to due process under the U.S. and Texas Constitutions, her right to an equitable division of the martial estate under Family Code section 7.001, and her property rights. Specifically, Wallace argues that the decree deviates from the MSA in numerous respects, which she sets forth in a detailed list attached as an appendix to her appellant's brief. In particular, Wallace argues on appeal that the decree:

(1) gives McFarlane exclusive rights with respect to the children's medical and mental health care, including the right to determine whether the children need mental health care;

(2) prohibits her from seeking medical treatment for the children while they are in her possession (with the exception of extended periods of possession);

10

(3) omits the MSA's requirement that the children are to attend therapy;

(4) requires Wallace and McFarlane to comply with the recommendations of Dr. Laval as set forth in his November 11, 2009 letter, as opposed to complying with Dr. Laval's October 2009 oral recommendations, as contemplated by the MSA; and

(5) omits the MSA's language prohibiting the dissemination of Dr. Laval's recommendations under most circumstances;

(6) awards McFarlane community property not addressed in the MSA (i.e., three E*trade accounts);

(7) includes passport language that varies significantly from the language required by the MSA (i.e., "language per the Family Code and Family Practice Manual"); and

(8) adds terms and provisions which were never agreed to by the parties, or addressed by the MSA, including:

   a.  injunctions prohibiting Wallace[4] from

      i.  making disparaging remarks or allowing others to make disparaging remarks about McFarlane or his family in the children's presence;

      ii.  calling, texting, or instant messaging McFarlane in "an offensive and repetitious manner" or "without a legitimate purpose"; and

      iii.  engaging in any act or speech reasonably calculated to provoke or excite McFarlane during any exchange of the children;

   b.  provisions regarding air travel;

   c.  specifying a specific location for the surrender and return of the children after periods of possession;

   d.  allocating tax liabilities between Wallace and McFarlane for 2005–2009;

   e.  dismissing with prejudice all pending protective orders and effectively prohibiting her from "testifying about all prior physical abuse;"

   f.  extinguishing any claims for emotional abuse;

---

[4] The decree enjoins both Wallace and McFarlane from engaging in such conduct, but Wallace is complaining about the provisions only as they apply to her.

g. ordering the survival of pending obligations for temporary support; and

h. lifting the agreed geographical restriction placed on the children's residence by the MSA under specific circumstances.

Wallace also argues that McFarlane's failure to disclose to Wallace during mediation the existence of the three E*trade accounts awarded to him in the decree amounted to fraud-by-nondisclosure.

## 1. Preservation of Error

Texas Rule of Appellate Procedure 33.1(a)(1)(A) provides that, as a prerequisite for presenting a complaint on appeal, the record must demonstrate that the complaining party made his complaint to the trial court by a timely request, objection, or motion that stated the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a)(1)(A); *see also Arkoma Basin Exploration Co. v. FMF Assocs. 1990–A*, 249 S.W.3d 380, 387 (Tex. 2008) ("[T]he cardinal rule for preserving error is that an objection must be clear enough to give the trial court an opportunity to correct it."); *Ricks v. Ricks*, 169 S.W.3d 523, 527–28 (Tex. App.—Dallas 2005, no pet.) (overruling complaint regarding discrepancy between MSA and final divorce decree because complaining party failed to make trial court aware of objection); *In re T.M.G.R.*, 164 S.W.3d 851, 855–56 (Tex. App.—Beaumont 2005, no pet.) (overruling complaints regarding discrepancies between MSA and trial court's order because complaints were contradicted by record and argument that portions

12

of order were unenforceable had not been presented to trial court). In order to preserve error, the party's complaint on appeal must comport with the argument it raised in the trial court. *Ferrara v. Moore*, 318 S.W.3d 487, 496 (Tex. App.—Texarkana 2010, pet. denied); *Wohlfahrt v. Holloway*, 172 S.W.3d 630, 639–40 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

The record before us on appeal reflects that the discrepancies raised in numbers 7 and 8(a), (c)-(g) were never specifically brought to the trial court's attention at the December 29th hearing, the April 13th hearing, or in any post-judgment motion. Although Wallace contends that she raised at least ten objections during a March 9, 2010 hearing on her motion to compel, there is no record of that proceeding. Regardless of what may have transpired at the March 9th hearing, the record before this Court (i.e., transcripts of the December 29, 2009 and April 13, 2010 hearings and the clerk's record) does not demonstrate that Wallace ever presented these issues to the trial court. *See* TEX. R. APP. P. 33.1 (requiring party seeking appellate review to show that complaint was preserved); *accord Shelton v. Standard Fire Ins.*, 816 S.W.2d 552, 553 (Tex. App.—Fort Worth 1991, no writ) (noting that appellant has burden to bring up record on appeal showing error that would require reversal). Accordingly, none of these objections have been preserved for our review. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Arkoma Basin Exploration*, 249 S.W.3d at 387.

13

### (1) Provisions Regarding Air Travel

Wallace's complaint about the inclusion of new provisions regarding air travel (number 8(b)) is moot. While this appeal has been pending, the matter was transferred to Montgomery County on a motion of the parties, and that court modified the provisions of the decree regarding the surrender and return of the children and the provisions relating to the children's air travel. Consequently, we need not address this issue. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of appeal.").

### (2) Fraud-by-Nondisclosure

Wallace's fraud-by-nondisclosure argument, which was raised for the first time at the April 13, 2010 hearing, was not preserved for appellate review either. Wallace's counsel argued at the April hearing that he had only just discovered a few days before that the decree awarded three E*trade accounts to McFarlane that were not included in the inventory of assets that McFarlane submitted during mediation the previous November. Although she argued that McFarlane's omission amounted to fraud-by-nondisclosure, Wallace did not offer any sworn testimony or documentary evidence of any kind in support of her allegation of fraud (e.g., a copy of the inventory list McFarlane submitted at mediation). More importantly, Wallace did not amend her motion for new trial to include this newly

discovered allegation. Therefore, Wallace has failed to preserve this issue for our review. *See* TEX. R. CIV. P. 324(b)(1) (stating that point in motion for new trial is prerequisite to complaint regarding newly discovered evidence).

### (3) Dr. Laval's Recommendations

Wallace also argues that the December decree orders the parties to comply with the recommendations of Dr. Laval as set forth in his November 11, 2009 letter, as opposed to complying with Dr. Laval's prior oral recommendations, as contemplated by the MSA signed on November 4, 2009. Dr. Laval's letter is not included in the appellate record. In fact, the record is silent as to any of Dr. Laval's recommendations.

It is possible that Dr. Laval's November 11 letter merely memorializes his earlier-stated oral recommendations, and, if that is the case, then the language in the decree would be consistent with the MSA and the intent of the parties. If not, the inclusion of this language in the decree could constitute reversible error. In fact, Wallace's counsel informed the trial court at the entry hearing: "Just for the record, Dr. Laval did write a letter on November 11, 2009. My client does not agree with—my client does not agree that his recommendations are consistent with everything that we talked about in mediation and possibly also with the phone conference that we had with him back in early November." Without Dr. Laval's recommendations before us, however, we have no way to make this determination.

Accordingly, this issue has not been preserved for our review. *See Shelton*, 816 S.W.2d at 553 (noting that appellant has burden to bring up record on appeal showing error that would require reversal).

### (4) Wallace's Right to Access Medical Care for the Children

Wallace argues that the December decree (1) gives McFarlane exclusive rights with respect to the children's medical and mental health care, including the right to determine whether the children need mental health care, even though that was not agreed to in the MSA; (2) prohibits her from seeking medical treatment for the children while they are in her possession (with the exception of extended periods of possession); and (3) omits the MSA's requirement that the children are to attend therapy.

Wallace argued to the trial court that the provision of the draft decree authorizing her to take the children to see a doctor for non-emergency care was incorrectly limited to her extended summer possession, Christmas holiday, or spring break, and that it should be modified to allow her to do so during any period of possession. McFarlane responded that the parties agreed in the MSA to follow Dr. Laval's recommendations. McFarlane and the children's attorney agreed that the provision in question was consistent with the "specific parameters" that Dr. Laval set forth in his November 11, 2009 letter. As previously discussed, Dr. Laval's letter is not included in the appellate record. Without Dr. Laval's letter

before us, we have no way to tell if this provision is consistent with Dr. Laval's recommendations as McFarlane and the children's attorney contend. Accordingly, this issue has not been preserved for our review. *See Shelton*, 816 S.W.2d 552, 553 (noting that appellant has burden to bring up record on appeal showing error that would require reversal).

Wallace's remaining complaints (numbers 1–3, 5–6, and 8(h)) were preserved for our review and we will address them accordingly.

## 2. Law Applicable to MSA and Final Divorce Decree

In suits affecting the parent-child relationship or suits for the dissolution of marriage, an MSA is binding on the parties and irrevocable if the agreement (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation, (2) is signed by each party to the agreement, and (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed. TEX. FAM. CODE ANN. §§ 6.602(b)-(c), 153.0071(d)-(e). If an MSA meets these statutory requirements, then the parties are entitled to judgment on that MSA "notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." TEX. FAM. CODE ANN. §§ 6.602(c), 153.0071(e); *see also Garcia–Udall v. Udall*, 141 S.W.3d 323, 327 (Tex. App.—Dallas 2004, no pet.). Accordingly, a trial court must enforce an MSA that meets these requirements unless a party demonstrates that the MSA was

illegal or was procured by fraud, duress, coercion, or other dishonest means. *Boyd v. Boyd*, 67 S.W.3d 398, 403 (Tex. App.—Fort Worth 2002, no pet.).

A final judgment founded upon an MSA must be in "strict or literal compliance" with that agreement. *Vickrey v. Am. Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976); *Beyers v. Roberts*, 199 S.W.3d 354, 362 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *see also Garcia-Udall*, 141 S.W.3d at 332 (concluding that trial court abused its discretion under Family Code section 153.0071 by entering judgment not conforming with MSA in suit affecting parent-child relationship). A trial court may modify the terms of an MSA, however, so long as those modifications do not add terms, significantly alter the original terms, or undermine the parties' intent. *Beyers*, 199 S.W.3d at 362–63 (stating modifications to MSAs only constitute reversible error if they "add terms, significantly alter the original terms, or undermine the intent of the parties"); *see also Keim v. Anderson*, 943 S.W.2d 938, 946 (Tex. App.—El Paso 1997, no pet.) (finding reversible error when trial court added provision requiring husband to pay $3,500 of wife's attorney's fees); *In the Matter of the Marriage of Ames*, 860 S.W.2d at 592–93 (holding trial court erred when it added terms which "differed significantly from the settlement agreement").

### (1) Prohibition against Distribution of Dr. Laval's Recommendations

The MSA states in pertinent part, "Dr. Laval's recommendations shall be

followed by both parties as to their individual situations. These recommendations shall be made a part of the [agreement incident to divorce] and held by each lawyer and not be released unless an emergency action [is] filed with Court *including enforcement action is filed." Wallace argues that this language prohibits the parties from sharing Dr. Laval's recommendations with anyone, unless there is an emergency. On the contrary, the language of the MSA only prohibits the parties' counsel from disseminating the information. Because the MSA does not prohibit McFarlane from divulging Dr. Laval's recommendations, the trial court did not abuse its discretion when it failed to include such a provision in the December decree.

### (2) Provisions Regarding the Children's Medical and Mental Health Care

Wallace argues that the December decree (1) gives McFarlane exclusive rights with respect to the children's medical and mental health care, including the right to determine whether the children need mental health care, even though that was not agreed to in the MSA; and (2) omits the MSA's requirement that the children are to attend therapy. The MSA states, "Exclusive to Dad on education after confer and consult with mom as well as psychological and psychiatric mom shall select therapist after dad gives her a list of three therapists." Contrary to Wallace's position, this language does not require the children to attend therapy. It gives McFarlane the exclusive right to make decisions with respect to the

children's mental health needs, after he confers and consults with Wallace. In the event McFarlane decides that the children need either psychological or psychiatric care, the MSA also gives Wallace the right to choose the children's therapist from a list of three compiled by McFarlane.

Because the MSA does not require the children to attend counseling or therapy, the trial court did not abuse its discretion when it declined to include such a provision in the December decree. Likewise, the provisions in the December decree addressing McFarlane's rights with respect to the children's medical and mental health care are entirely consistent with the terms of the MSA, and thus, their inclusion does not constitute an abuse of discretion either.

### (3) Community Property

Wallace argues that the December decree improperly awards McFarlane community property that was not addressed in the MSA (i.e., three E*trade accounts). The MSA awarded each party "his or her own bank accounts, retirement, real estate, vehicles, and personal property." The December decree goes a step further and specifically lists those items. This type of modification does not, however, add terms, significantly alter the original terms, or undermine the parties' intent, and thus, does not constitute reversible error. *See Beyers*, 199 S.W.3d at 362–63.

### (4) Geographical Restriction

Wallace argues that, although both the MSA and draft decree limit the children's primary residence to specific counties in the Houston and Dallas metro areas, page 6 of the draft decree also includes a provision lifting that restriction if Wallace moves from her current residence or outside the 250-mile radius of the 312th District Court of Harris County. Wallace argues that the MSA did not address when (or if) the geographical restriction could be lifted. This provision lifting the geographical restriction on the children's residence in certain circumstances was not addressed in the MSA. The trial court abused its discretion by adding this new term to the December decree. *See Beyers*, 199 S.W.3d at 362–63 (stating modifications to MSAs only constitute reversible error if they "add terms, significantly alter the original terms, or undermine the intent of the parties").

We overrule Wallace's third issue, except as it pertains to her complaint regarding language in the December decree lifting the geographical restriction placed on the children's residence.

### D. Denial of Motion for New Trial and Motion to Vacate or Modify Decree

In her fourth issue, Wallace contends that the trial court erred by denying her motion to vacate or modify the final divorce decree and her motion for new trial on

the basis that both motions were too general and unclear.[5]  The denial of such

motions is generally reviewed under an abuse of discretion standard.  *See Waffle*

*House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010).  A trial court abuses its

discretion when its action is arbitrary, unreasonable, or "without reference to any

guiding rules and principles."  *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d

238, 241–42 (Tex. 1985).  A trial court does not abuse its discretion if it reaches

the right result, even for the wrong reason.  *Luxenberg v. Marshall*, 835 S.W.2d

136, 141–42 (Tex. App.—Dallas 1992, orig. proceeding).

### 1.	Motion for New Trial

In her motion, Wallace argued that she was entitled to a new trial because

the evidence was legally and factually insufficient to support the trial court's

finding that the decree conformed to the terms of the MSA.  According to Wallace,

the MSA was not "accurately represented" in the decree.  Wallace further alleged

that the decree contained unspecified "substantial clerical and substantive errors."

Wallace's motion for new trial did not specifically identify the portions of the

December decree that she contended failed to conform to the terms of the MSA.

From the face of the motion, there was no way for the trial court to know if

---

[5]	The record reflects that the trial court denied Wallace's motion for new trial because the motion was too general and unclear.  The record also reflects that the trial court denied her motion to vacate or modify the decree because, having denied Wallace's motion for new trial, her only remedy was a motion to modify the judgment.

Wallace was requesting a new trial based on all, some, or even none of the challenges she raised to the decree at the entry hearing.[6] Given the lack of specificity in her motion, we hold that the trial court did not abuse its discretion when it denied Wallace's motion for new trial. *See* TEX. R. CIV. P. 321 (stating that each point in motion for new trial or motion in arrest of judgment must refer to complaint "in such a way that the objection can be clearly identified and understood by the court"); TEX. R. CIV. P. 322 (prohibiting consideration of grounds for objection "couched in general terms"). We further note that even if Wallace's motion had complied with Rules 321 and 322, the trial court was, nevertheless, correct in denying her motion because, although she alleged that the decree did not strictly comply with the MSA, she failed to demonstrate that the decree contained any reversible error (i.e., added new terms or significantly altered the terms of the MSA, or undermined the intent of the parties). *See Beyers*, 199 S.W.3d at 362–63 (stating modifications to MSAs only constitute reversible error if they "add terms, significantly alter the original terms, or undermine the intent of the parties").

---

[6] As previously discussed, Wallace attempted to challenge the conformity of several provisions on appeal that she never argued to the trial court at any hearing, or specifically raised in a post-judgment motion.

23

## 2. Motion to Vacate or Modify Decree

Wallace also filed a "Motion to Vacate and Alternative Motion for Additional Orders" in which she argued that the December decree contained a misstatement of the MSA and included injunctions not agreed to at mediation. Wallace asked the court to either modify the existing decree or vacate the decree and enter a new decree correcting certain errors. Specifically, Wallace argued that the December decree improperly omitted provisions, (1) requiring court-ordered therapy for the children, and (2) enjoining McFarlane from distributing Dr. Laval's recommendations.[7] She also argued that the decree included ambiguous provisions on air travel that required clarification and that the decree it needed to be modified "to reflect the MSA which contain[ed] no injunctions against [Wallace]."

Regardless of the reason given, the trial court did not abuse its discretion when it denied Wallace's motions. *See Luxenberg*, 835 S.W.2d at 141–42 (stating trial court does not abuse its discretion if it reaches right result, even for wrong reason). As previously discussed, the MSA neither requires the children to see a therapist or counselor nor enjoins McFarlane from distributing Dr. Laval's recommendations to others, and her complaint regarding air travel is moot.

---

[7]    Wallace also complained in her motion to vacate that the December decree improperly omitted language addressing telephone contact. Wallace does not complain about the omission of this language on appeal.

Wallace's remaining allegation that the decree needed be modified "to reflect the MSA which contain[ed] no injunctions against [Wallace]" is an incorrect statement of the MSA and does not entitle her to relief. The MSA clearly and unequivocally enjoined Wallace from taking the children to see mental health professionals. ("Mom shall not be permitted to take children to mental health professionals.")

We overrule Wallace's fourth issue.

## Conclusion

We reform the judgment to delete the language lifting the geographical restriction on the children's residence under certain circumstances, and we affirm the trial court's judgment as modified.

Jim Sharp
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.